## Exhibit A

### (Proposed Interim Order)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x
:
In re:                                            :    Chapter 11
:
Vertellus Specialties Inc., *et al.*,[1]          :    Case No. 16-_____ (___)
:
Debtors.                                   :    (Jointly Administered)
:
--------------------------------------------------------------x   **Re: Dkt. No. ___**

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) GRANTING RELATED RELIEF AND (IV) SCHEDULING FINAL HEARING

Upon the motion (the "**Motion**")[2] of Vertellus Specialties Inc. ("**VSI**") and the other debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and local rule 4001-2 of the Local Bankruptcy Rules of Practice and Procedure for the District of Delaware (the "**Local Rules**"), seeking, among other things:

A.      authorization for VSI, as borrower (the "**Borrower**"), to obtain, and for certain other Debtors to guarantee (in such capacities, the "**Guarantors**" and, together with the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vertellus Specialties Holdings Corp. (9569); Vertellus Specialties Inc. (7240); Vertellus Agriculture & Nutrition Specialties LLC (5687); Tibbs Avenue Company (9642); Vertellus Specialties PA LLC (0900); Vertellus Health & Specialty Products LLC (6325); Vertellus Specialties MI LLC (0398); Vertellus Performance Materials Inc. (7461); Rutherford Chemicals LLC (8878); Solar Aluminum Technology Services (d/b/a S.A.L.T.S.) (3632); and MRM Toluic Company, Inc. (0544).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 201 N. Illinois Street, Suite 1800, Indianapolis, IN 46204.

[2]    Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to them in the Motion.

Borrower, the "**Loan Parties**") secured postpetition financing (the "**DIP Financing**") in the form of a term loan facility (the "**DIP Facility**") in an aggregate principal amount of up to $110 million (the "**DIP Loans**"), on the terms and conditions set forth in this Interim Order and the DIP Documents (each as defined below);

B.    authorization for the Loan Parties to execute and deliver the Debtor-in-Possession Credit Agreement dated as of the date of this Interim Order, among the Borrower, the Guarantors, the lenders from time to time party thereto (the "**DIP Lenders**"), and Wilmington Trust, National Association (**"Wilmington Trust"**), as administrative agent and collateral agent (collectively, in such capacities, the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**"), substantially in the form attached to the Motion as <u>Exhibit B</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, collectively with the schedules and exhibits attached thereto, all agreements, documents, certificates, instruments and/or amendments executed by and/or delivered by or to any Loan Party in connection therewith and the Orders, the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the DIP Documents;

C.    authorization for the Prepetition ABL Loan Parties (as defined below) to execute and deliver that certain Payoff Letter, substantially in the form attached to the Motion as <u>Exhibit F</u>, which has prepared by the Prepetition ABL Agent (as defined below) and approved by the DIP Secured Parties and the Prepetition Term Facility Secured Parties (as defined below) (the "**Payoff Letter**"), and perform all such other and further acts as may be required in connection with the Payoff Letter;

EAST\124882458.3

D.      authorization (provided that all conditions precedent thereto under the DIP Documents have been satisfied or waived in accordance with the DIP Credit Agreement) for the Loan Parties to immediately borrow and use the initial draw under the DIP Financing to repay in full, in cash (or otherwise cash collateralize) the Prepetition ABL Obligations (as defined below) in accordance with the Payoff Letter ("**ABL Facility Payoff**," and the amounts required to be cash collateralized pursuant to the Payoff Letter referred to as the "**Payoff Cash Collateral**");

E.      the granting to the DIP Agent (for the benefit of the DIP Secured Parties) of the DIP Liens and the DIP Superpriority Claims (each as defined below);

F.      the granting of adequate protection to the Prepetition Secured Parties (as defined below);

G.      authorization for the Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Term Facility Collateral (as defined below) and any proceeds thereof, following the ABL Facility Payoff;

H.      approval of certain stipulations by the Debtors with respect to the Existing Agreements (as defined below) and the obligations, liens and security interests arising therefrom, subject to the rights preserved for parties in interest in Paragraph 21 of this Interim Order;

I.      subject only to and effective upon entry of the Final Order (as defined below), the waiver of (i) the Debtors' right to surcharge the Prepetition Term Facility Collateral, the Prepetition ABL Collateral (as defined below), and the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code; and (ii) any rights of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

J.      modification of the automatic stay to the extent set forth in this Interim Order;

K.      pursuant to Bankruptcy Rule 4001, scheduling an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of an order granting the Motion on an interim basis (this "**Interim Order**"); and

L.      scheduling a final hearing (the "**Final Hearing**") to be held within twenty-five (25) days of the entry of the Interim Order to consider entry of a final order (the "**Final Order**" and together with the Interim Order, the "**Orders**") approving the relief granted herein on a final basis and authorizing the Borrower to borrow, and the Guarantors to guarantee, up to the full amount of the DIP Financing.

Due and appropriate notice of the Motion and the Interim Hearing having been served by the Debtors on the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), holders of the 20 largest unsecured claims against each of the Debtors, counsel to the DIP Agent, counsel to the Prepetition ABL Agent, counsel to the Prepetition Term Facility Agent (each as defined below), counsel to the Ad Hoc Group of Prepetition Term Lenders (the "**Ad Hoc Group**"), the Internal Revenue Service, the Securities and Exchange Commission, the Pension Benefit Guaranty Corporation, and the United States Attorney's Office for the District of Delaware; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Interim Hearing having been held before this Court on June [1], 2016; and upon the record made by the Debtors in the Motion, in the *Declaration of Philip Gillespie in Support of First Day Pleadings* (the "**First Day Declaration**") (Docket No. [  ]), and at the Interim Hearing; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties in interest in these cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and the Court having determined that the

legal and factual bases set forth in the Motion and on the record before the Court establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED,[3] that:

1.    *Disposition.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.    *Jurisdiction.*  This Court has core jurisdiction over these cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Notice.*  Proper, timely, adequate and sufficient notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in Paragraph 36 below. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

4.    *Debtors' Stipulations.*  Subject to the limitations contained in Paragraph 21 below, the Debtors admit, stipulate and agree as follows, for themselves and their estates:

---

[3]    In accordance with Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

(a)      _Prepetition ABL Obligations_.  As of the date of the filing (the "**Petition Date**") of the Debtors' chapter 11 cases (the "**Chapter 11 Cases**"), VSI, Vertellus Agriculture & Nutrition Specialties LLC, Vertellus Health & Specialty Products LLC, Vertellus Performance Materials Inc., Vertellus Specialties PA LLC, Vertellus Specialties MI LLC,  and Rutherford Chemicals LLC (collectively, the "**Prepetition ABL Borrowers**"), together with the VSI parent and subsidiaries serving as guarantors in connection therewith (the "**Prepetition ABL Guarantors**"; together with the Prepetition ABL Borrowers, the "**Prepetition ABL Loan Parties**") were justly and lawfully indebted and liable under that certain Amended and Restated Revolving Credit and Security Agreement, dated as of October 31, 2014 (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits, the "**Prepetition ABL Credit Agreement**";[4] collectively with the schedules and exhibits attached thereto, all agreements, documents, certificates, instruments and/or amendments executed by and/or delivered by or to any of the Prepetition ABL Loan Parties in connection therewith, the "**Prepetition ABL Loan Documents**"), among the Prepetition ABL Borrowers, PNC Bank, National Association, as administrative and collateral agent (the "**Prepetition ABL Agent**"), and lenders from time to time party thereto (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agent, the "**Prepetition ABL Secured Parties**"), without defense, challenge, objection, claim, counterclaim or offset of any kind.  All obligations under the Prepetition ABL Loan Documents are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, in a principal amount of not less than $[63,294,423.59] as of the Petition Date, together with accrued and unpaid and, to the extent accrued and permitted under section 506(b) of the Bankruptcy Code (measured without giving effect to the DIP Loans), hereafter accruing

---

[4]     A copy of the Prepetition ABL Credit Agreement, without exhibits, is attached to the Motion as Exhibit D.

interest, fees (including without limitation, attorneys', accountants', appraisers' and financial advisors' fees, and related expenses in each case, that are chargeable or reimbursable under the Prepetition ABL Loan Documents), costs, charges, indemnities, and other obligations (collectively, the "**Prepetition ABL Obligations**"). The Prepetition ABL Obligations constitute legal, valid, binding and non-avoidable obligations of the Prepetition ABL Loan Parties.

(b)    <u>Prepetition ABL Liens</u>.    The liens and security interests granted to the Prepetition ABL Secured Parties (the "**Prepetition ABL Liens**") pursuant to and in connection with the Prepetition ABL Loan Documents are:   (i) valid, binding, properly perfected, enforceable, liens and security interests in the "Collateral" (as defined in the Prepetition ABL Credit Agreement, the "**Prepetition ABL Collateral**") having, in the case of Prepetition ABL Collateral constituting ABL Priority Collateral (as defined in the Intercreditor Agreement referred to (and as defined) in each of the Prepetition ABL Credit Agreement and the Prepetition Term Facility Credit Agreement (the **"Intercreditor Agreement"**)),[5] first-priority, and, in the case of Prepetition ABL Collateral constituting Term Priority Collateral (as defined in the Intercreditor Agreement),   second-priority subject to the first-priority of the Prepetition Term Facility Liens thereon; (ii) not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or Claim under the Bankruptcy Code (including claims or causes of action under Chapter 5 of the Bankruptcy Code) or applicable non-bankruptcy law; and (iii) subject and subordinate only to the "Permitted Liens" (as defined in the Prepetition ABL Credit Agreement, to the extent any such Permitted Liens were valid, binding, enforceable, properly perfected, nonavoidable and

---

[5]    A copy of the Intercreditor Agreement is attached to the Motion as <u>Exhibit E</u>.

senior in priority to the Prepetition ABL Liens as of the Petition Date, the "**ABL Permitted Liens**"), the Prepetition Term Facility Liens with respect to the Term Priority Collateral to the extent set forth in the Intercreditor Agreement, and, after giving effect to this Interim Order and the ABL Facility Payoff, the DIP Liens, the Prepetition Term Facility Adequate Protection Liens (as defined below) (with respect to the Term Priority Collateral), and the Carve-Out.

(c)     ABL Surviving Obligations.  As of the Petition Date, the Prepetition ABL Loan Parties were justly and lawfully indebted and liable with respect to the Surviving Obligations (as defined in the Payoff Letter) (the "**ABL Surviving Obligations**") under the Prepetition ABL Loan Documents, without defense, challenge, objection, claim, counterclaim or offset of any kind.  The ABL Surviving Obligations are secured claims (in an amount that remains unliquidated) within the meaning of Section 506 of the Bankruptcy Code. The ABL Surviving Obligations constitute legal, valid, binding and non-avoidable obligations of the Prepetition ABL Loan Parties.

(d)     ABL Surviving Obligation Liens.  The liens and security interests granted to the Prepetition ABL Secured Parties with respect to the ABL Surviving Obligations (the "**ABL Surviving Obligation Liens**") are (i) *pari passu* with, and subject and subordinate to all of the same liens and interests as, the Prepetition ABL Liens; and (ii) entitled to adequate protection as set forth in Paragraph 17 of this Interim Order.

(e)     Prepetition Term Facility Obligations.  As of the Petition Date, VSI and the VSI parent and subsidiaries serving as guarantors in connection therewith (the "**Prepetition Term Facility Guarantors**") were justly and lawfully indebted and liable under that certain Credit Agreement, dated as of October 31, 2014 (as amended, supplemented or otherwise modified prior to the date hereof, and including all schedules and exhibits thereto, the

"**Prepetition Term Facility Credit Agreement**"[6] and, collectively with all guarantee, security and other agreements, documents, certificates, instruments and/or amendments executed by and/or delivered by or to VSI or any of the Prepetition Term Facility Guarantors in connection therewith, collectively, the "**Prepetition Term Facility Documents**"; and together with the Prepetition ABL Loan  Documents, the "**Existing Agreements**") among VSI, Vertellus Specialties Holdings Corp., the subsidiary guarantors party thereto, Wilmington Trust (as successor to Jefferies Finance LLC), as administrative agent and collateral agent (collectively, in such capacities, the "**Prepetition Term Facility Agent**," and together with the Prepetition ABL Agent, the "**Prepetition Agents**")), and lenders from time to time party thereto (the "**Prepetition Term Facility Lenders**" and, together with the Prepetition Term Facility Agent, the "**Prepetition Term Facility Secured Parties**" and, together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**"; and, together with the DIP Secured Parties, the "**Secured Parties**"), without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $471,007,280 in respect of loans made, plus accrued and unpaid interest and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and out-of-pocket expenses, in each case, that are chargeable or reimbursable under the Prepetition Term Facility Documents), charges, indemnities and other obligations incurred in connection therewith (collectively, the "**Prepetition Term Facility Obligations**," and together with the Prepetition ABL Obligations, the "**Prepetition Obligations**"), which Prepetition Term Facility Obligations were guaranteed on a joint and several basis by all of the Prepetition Term Facility Guarantors.

---

[6]    A copy of the Prepetition Term Facility Credit Agreement, without exhibits, is attached to the Motion as <u>Exhibit C</u>.

(f)     <u>Prepetition Term Facility Liens</u>.  The liens and security interests granted to the Prepetition Term Facility Secured Parties (the "**Prepetition Term Facility Liens**," and together with the Prepetition ABL Liens, the "**Prepetition Liens**"**)** pursuant to and in connection with the Prepetition Term Credit Facility Documents are:   (i) valid, binding, perfected, enforceable  liens and security interests in the "Collateral" (as defined in the Prepetition Term Facility Credit Agreement) (the "**Prepetition Term Facility Collateral**" and, together with the Prepetition ABL Collateral, the "**Prepetition Collateral**") having, in the case of Prepetition Term Facility Collateral constituting Term Priority Collateral, first priority, and, in the case of Prepetition Term Facility Collateral constituting ABL Priority Collateral, second- priority subject to the first-priority of the Prepetition ABL Liens thereon; (ii) not subject to avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, attack, effect, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; (iii) subject and subordinate only to the "Permitted Liens" (as defined in the Prepetition Term Facility Credit Agreement) (the "**Term Loan Permitted Liens**"), prior to the ABL Facility Payoff, the Prepetition ABL Liens with respect to the ABL Priority Collateral and the Term Priority Collateral solely on account of (and only to the extent of) the First Out ABL Obligations (as defined in the Intercreditor Agreement), and after giving effect to this Interim Order, the DIP Liens, the Prepetition Term Facility Adequate Protection Liens (as defined below), and the Carve-Out.

(g)     <u>No Control of Debtors</u>.   No Prepetition Secured Party controls the Debtors or their properties or operations, has authority to determine the manner in which any Debtor's operations are conducted, or is a control person or insider of any of the Debtors by

virtue of any of the actions taken with respect to, in connection with, related to or arising from the Existing Agreements.

(h)    <u>Depository Accounts</u>.  All cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository Institutions**") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition Secured Parties.

(i)    <u>Cash Collateral</u>.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

(j)    <u>No Claims Against Prepetition Secured Parties</u>.  No claims or causes of action exist against, or with respect to, the Prepetition Secured Parties under any of the Existing Agreements.

(k)    <u>Release</u>.  The Debtors hereby forever, unconditionally and irrevocably release, discharge, and acquit the DIP Agent, the DIP Lenders, the Ad Hoc Group and its members, and each of the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes,

liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' and financial advisors' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the DIP Facility, the DIP Documents, the Existing Agreements and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the extent, validity, priority, perfection, or avoidability of the DIP Liens, the DIP Obligations (as defined below), the Prepetition Liens, and the Prepetition Obligations.   The Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the DIP Obligations and the Prepetition Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court entering this Interim Order.

(l)     <u>Indemnity</u>.  The Debtors shall, jointly and severally, be obligated to indemnify and hold harmless each of  the DIP Agent, the DIP Lenders,  the Ad Hoc Group and its members, and the Prepetition Secured Parties, and each of their respective affiliates, equityholders, partners, managers, investors, officers, directors, fiduciaries, employees, agents, trustees, advisors, attorneys and representatives (each, an "**Indemnified Person**") from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, as to (x) the DIP Secured Parties and (y) the Prepetition Secured Parties, in each case the reasonable and documented fees and out-of-pocket disbursements of one primary counsel, one local counsel and one financial advisor, and, if necessary, a single special counsel for each relevant specialty in

12

connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility, the Prepetition Term Facility, the Prepetition ABL Facility or any other transactions contemplated under the DIP Documents except to the extent arising from any dispute solely among Indemnified Persons which does not arise out of any act or omission of the Debtors (other than any proceeding against any Indemnified Person solely in its capacity or in fulfilling its role as the DIP Agent, the Prepetition Term Agent, the Prepetition ABL Agent, or any similar role); provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from the bad faith, fraud, gross negligence or willful misconduct of such Indemnified Person; and provided further, that the foregoing shall not limit the rights of the Prepetition ABL Secured Parties to indemnification pursuant to the Prepetition ABL Credit Agreement and the Payoff Letter.

5.    *Findings Regarding the DIP Financing.*

(a)    Good and Sufficient Cause.  Good and sufficient cause has been shown for the entry of this Interim Order.

(b)    Immediate Need for Financing.  The Loan Parties have an immediate need to obtain the DIP Loans and continue to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with employees, vendors, suppliers and customers, to make payroll, to make capital expenditures, to consummate the ABL Facility Payoff in accordance with the Payoff Letter, to satisfy the costs of administration of the Chapter 11 Cases, and to provide for other working capital and operational needs.  The Loan Parties' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the

period of effectiveness of this Interim Order.   The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other  Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to maximizing the Debtors' enterprise value for all constituencies, and to preserving the Debtors' assets for the benefit of their creditors and their estates.

(c)      Best Financing Available.  The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) or 364(c)(1) of the Bankruptcy Code as an administrative expense, or secured credit allowable under sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code.  The terms and conditions set forth in the DIP Documents are the best financing terms and conditions obtainable by the Debtors and would not be available to the Debtors without granting to the DIP Agent and the DIP Lenders the DIP Liens and the DIP Superpriority Claims and granting the Adequate Protection Liens with respect to the Prepetition Term Facility Adequate Protection Obligations (as defined below) and the ABL Surviving Obligations, in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)      Fair and Reasonable Terms.  Based on the record before the Court at the Interim Hearing, the terms of the DIP Financing and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) following the ABL Facility Payoff, pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.  As a condition to the approval of

14

the DIP Credit Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Agent requires, the Debtors have agreed, and the Court hereby authorizes the Debtors to use the proceeds of the DIP Facility to repay (or otherwise cash collateralize), in full, in cash, the Prepetition ABL Obligations on the Closing Date (as defined in the DIP Credit Agreement) in accordance with this Interim Order and the Payoff Letter.   Such payment will not prejudice the Debtors or their estates, because payment of such amounts is subject to the challenge rights of parties in interest under Paragraph 21 herein.

(e)      Consent of Prepetition Secured Parties.   To the extent such consent is required, the Prepetition Secured Parties, by and through the respective Prepetition Agents, have consented or are deemed to have consented to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the Loan Parties' entry into the DIP Documents, the ABL Facility Payoff and the granting of the DIP Liens and DIP Superpriority Claims, subject to the terms of this Interim Order.

(f)      Arms' Length Negotiation.   The DIP Financing and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the DIP Secured Parties, and each of the Prepetition Secured Parties, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with the DIP Financing and the DIP Documents (the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties (and the successors and assigns of each party thereof) shall be

15

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     Entitlement to Adequate Protection.  The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  The terms of the proposed adequate protection package for the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral); provided that nothing in this Interim Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties to the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order (including the repayment (and cash collateralization) of the Prepetition ABL Obligations and the use of Cash Collateral permitted by the order entered by the Court permitting the Debtors to pay prepetition payroll and related items [D.I. __]); (y) be construed as a consent by any Prepetition Secured Party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior, on par or junior); or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection.

(h)     Prudent Business Judgment.  The Debtors' decision to enter into the DIP Documents and consummate the ABL Facility Payoff reflects the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties.

(i)     Immediate and Irreparable Harm.  Absent granting the relief set forth in this Interim Order, including an immediate entry of this Interim Order pursuant to Bankruptcy

Rules 4001(b)(2) and 4001(c)(2) and the Local Rules, the Loan Parties' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the DIP Documents are, therefore, in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

6.    *Authorization of the DIP Financing, the DIP Documents, and the ABL Facility Payoff.*

(a)    <u>Authority to Borrow</u>. The Loan Parties are hereby authorized to execute, deliver, and perform all obligations under, the DIP Documents and Payoff Letter. The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guarantee the DIP Obligations, up to an aggregate original principal amount equal to $110 million under the DIP Facility, subject to any limitations on borrowing under the DIP Documents, to be used for all purposes permitted under, and subject to the terms and conditions of, the DIP Documents, including, without limitation, paying and performing all obligations under the Payoff Letter, including the funding of DIP Loans on the Closing Date in an aggregate principal amount sufficient to permit the Debtors to repay and/or otherwise cash collateralize the Prepetition ABL Obligations in accordance with the Payoff Letter and this Interim Order. Immediately upon the Debtors' funding of the Payoff Cash Collateral and delivery of the Payoff Amount (as defined in the Payoff Letter) to the Prepetition ABL Agent in accordance with the Payoff Letter, all obligations under the Prepetition ABL Loan Documents (other than the ABL Surviving Obligations) shall be terminated and discharged in full and all collateral and security (other than the Payoff Cash Collateral held by the Prepetition ABL Agent pursuant to the Payoff Letter and this Interim Order and the ABL Adequate Protection Liens

granted pursuant hereto) of the Prepetition ABL Agent shall be released from the Prepetition ABL Agent's liens and claims, subject to the terms of the Payoff Letter and all such transactions remaining subject to the Challenge Period as set forth in Paragraph 21 of this Interim Order). All such DIP Loans, including any funding into the Funding Account (as defined below), shall constitute a single tranche of DIP Loans outstanding under the DIP Facility.

(b)     Funding Account.  On the Closing Date, notwithstanding Section 3.22 of the DIP Credit Agreement and subject to Paragraph 6(f) below, the proceeds of the DIP Loans shall be funded or credited to a trust account established at Wilmington Trust, which is and shall remain subject to the exclusive control and dominion of the DIP Agent (the "**Funding Account**"), subject to the terms of the DIP Order and the DIP Credit Agreement.  On the Closing Date, Wilmington Trust shall be authorized pursuant to a funding authorization letter from the Borrower to immediately transfer funds to: (i) the Prepetition ABL Agent to repay (or otherwise cash collateralize) the Prepetition ABL Obligations in accordance with the Payoff Letter and this Interim Order; (ii) pay all accrued but unpaid reasonable and documented fees and expenses of counsel and financial advisors to (A) the Prepetition Term Facility Agent, (B) the Ad Hoc Group, (C) the members of the Ad Hoc Group, (D) the DIP Agent, and (E) the DIP Lenders, each in an amount and to the parties as set forth in the funding authorization letter or any schedule thereto; and (iii) the Debtors in the sum of  $1,630,000 (on account of the immediate funding needs of the Debtors on or about the Petition Date).  On and after the Closing Date, certain funds of the Debtors (including, without limitation, (x) net cash proceeds of DIP Collateral disposed of by the Debtors in the ordinary course of business and (y) any amount of the Payoff Cash Collateral remitted to the Debtors in accordance with the Payoff Letter) shall, in accordance with the DIP Credit Agreement, be deposited into the Funding Account.  The

Debtors may, subject to conditions precedent set forth in the DIP Credit Agreement, withdraw or apply funds from the Funding Account solely to (i) pay one or more disbursements set forth in the then-effective Budget (as defined below) in an amount not to exceed the amount for such disbursements set forth in the then-effective Budget (subject to Permitted Variances thereto); (ii) pay any fees or other amounts due and payable to the DIP Lenders or the DIP Agent; or (iii) pay such other amounts that are due and payable under the DIP Documents, including adequate protection payments to the Prepetition Term Facility Secured Parties; provided that $10,000,000 in the Funding Account shall not be available for withdrawal by the Debtors until entry by the Court of the Final Order.  The Funding Account shall be a trust account of the DIP Lenders maintained with Wilmington Trust and will not constitute property of the Debtors or their estates.

(c)      Compliance with Budget.  The Debtors are hereby authorized to use the funds in the Funding Account and the Cash Collateral pursuant to the DIP Documents, including the Budget.

(i)      For purposes hereof: (a) "**Budget**" means a 13-week operating budget, which forecast shall be in form and substance satisfactory to the  Required Lenders (as defined in the DIP Credit Agreement), setting forth all forecasted receipts and disbursements of the Debtors and their subsidiaries on a weekly basis for such 13-week period beginning as of the week of the Petition Date, which shall include, among other things, available cash, revenue, cash flow, trade payables and ordinary course expenses, total expenses and capital expenditures, fees and expenses relating to the DIP Facility, fees and expenses related to the Chapter 11 Cases, working capital and other general corporate financial needs; provided that each such proposed budget shall only be deemed to constitute a new Budget if consented to in writing by the

Required Lenders; and (b) "**Permitted Variances**" means (i) all variances that are favorable to the interests of the Loan Parties and the DIP Secured Parties, and (ii) any variance that is unfavorable to the interests of the Loan Parties or the DIP Secured Parties and does not exceed, (x) with respect to disbursements solely on account of fees, costs and expenses of professional advisors to each of the Debtors, the DIP Secured Parties, the Creditors' Committee (as defined below), or any other professionals retained at the expense of the Debtors' estates under relevant provisions of the Bankruptcy Code (the "**Professional Fees**"),  20.0%; and (y) with respect to net cash flow (excluding Professional Fees), the greater of 20.0% and $1,000,000, in each case under clauses (x) and (y) tested weekly (commencing at the end of the second calendar week ending after the Petition Date) on a cumulative basis, based upon the Budget.

     (ii)  The Budget, the initial version of which is annexed hereto as Exhibit 1, shall permit the use of such funds: to pay (x) all fees due to DIP Lenders and the Ad Hoc Group (including, without limitation, the fees described below) under the DIP Loan Documents and (y) all reasonable pre- and post-petition professional fees and expenses (including legal, financial advisor, appraisal and valuation-related fees and expenses) incurred by the DIP Lenders, the DIP Agent and the Ad Hoc Group, including, without limitation, those incurred in connection with the preparation, negotiation, documentation and court approval of the DIP Documents; (y) to provide working capital to the Debtors and their non-Debtor subsidiaries (but not, for the avoidance of doubt, any equity holder or other affiliate of the Borrower except as otherwise may be permitted under the DIP Credit Agreement); and (z) to pay amounts in respect of the adequate protection provided to the Prepetition Term Facility Secured Parties and fund the costs of administration of the Chapter 11 Case (including Debtors' and

Creditors' Committee's professional fees and expenses), subject to the Budget (subject to Permitted Variances).

(iii)    For the avoidance of doubt, except to the extent expressly approved by the Required Lenders in advance, Holdings and the Borrower will not permit any Foreign Subsidiary (as defined in the DIP Credit Agreement) to make any payment to any of the VPC Companies (as defined in the DIP Credit Agreement) in excess of (i) an aggregate amount equal to $3,800,000 with respect to funds withheld from payment by the Foreign Subsidiaries to the VPC Companies in the ordinary course of business during the period of the forbearance agreement: and (ii) during the period that the Interim Order is in effect, other than in the ordinary course of business, an aggregate amount equal to $2,000,000 per month; provided that, in each case, immediately after giving effect to each such payment, the paying Foreign Subsidiary or Foreign Subsidiaries shall have sufficient liquidity to operate in the ordinary course, no payments shall be made in advance of when due or in an amount in excess of amounts due, no payments shall constitute a prepayment, and the Borrower shall provide notice of all such payments in their monthly reporting.

(d)    <u>All Required Action</u>.  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of this Interim Order, security agreements, mortgages and financing statements), and to pay all fees, expenses, costs and indemnities, in each case that may be reasonably required or necessary for the Loan Parties' performance of their obligations under the DIP Financing and the Payoff Letter, including, without limitation:

21

(i)        the execution and delivery of, and performance under, each of the DIP Documents and the Payoff Letter (including the Prepetition ABL Agent's right to apply the Payoff Cash Collateral to the ABL Surviving Obligations in accordance with the terms of the Payoff Letter (including the notice provisions set forth therein)), and subject to the challenge rights set forth in Paragraph 21 hereof, to provide for the releases in favor of the Prepetition Secured Parties and their Releasees as set forth therein;

(ii)        the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, for, among other things, the purpose of adding additional lenders as DIP Lenders and reallocating the commitments for the DIP Financing among the DIP Lenders, in each case, in such form as the Loan Parties, the DIP Agent and the requisite DIP Lenders may agree (it being understood that no further approval of the Court shall be required for any (x) authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder); provided, however, that the Debtors shall provide prior notice of each such amendment, waiver, consent or other modification to the U.S. Trustee and any official committee(s) appointed in these Chapter 11 Cases (the **"Creditors' Committee"**); or (y) assignments of commitments or DIP Loans between existing or new DIP Lenders in accordance with the DIP Credit Agreement (and any fees paid in connection therewith));

(iii)        the non-refundable payment to the DIP Agent, the DIP Lenders, the Ad Hoc Group and its members, or any of the Prepetition Secured Parties, as the case may be, of all fees (which fees shall not be subject to any challenge, contest, attack, rejection,

recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), whether incurred prior to or after the Petition Date, and any amounts due (or that may become due) in respect of the indemnification obligations, and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of professionals retained by any of the DIP Agent, DIP Lenders, the Ad Hoc Group and its members, or the Prepetition Secured Parties, subject (to the extent applicable under Paragraph 16(d) hereof) to the Review Period, in each case, as provided for in the DIP Documents or this Interim Order, without the need to file retention or fee applications or to provide notice to any party, except as otherwise provided herein; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(e)    Valid and Binding Obligations.   Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and this Interim Order.   No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code). Upon execution and delivery, the Payoff Letter shall represent a valid and binding obligation of the Debtors, enforceable against each of the Debtors and their estates in accordance with its terms, subject only to the challenge rights of third parties set forth in Paragraph 21 hereof. Notwithstanding anything to the contrary in the Intercreditor Agreement, upon receipt of the

Payoff Deliveries (as defined in the Payoff Letter), the Prepetition ABL Agent may, but is not required to, terminate all bank account control agreements, bailee letters, landlord agreements or similar agreements with respect to its rights thereunder, and may deliver to the DIP Agent any possessory collateral in the Prepetition ABL Agent's possession.

(f)     Repayment of the Prepetition ABL Obligations.   The Loan Parties are hereby authorized and directed to use proceeds of the DIP Financing on the Closing Date to, (i) pay the Payoff Amount (as defined in the Payoff Letter) to the Prepetition ABL Agent pursuant to the Payoff Letter; and (ii) remit the Payoff Cash Collateral to the Prepetition ABL Agent pursuant to the terms of the Payoff Letter and this Interim Order.   Except as provided in the Payoff Letter, effective upon the entry of this Interim Order and the receipt of the Payoff Deliveries (as defined in the Payoff Letter), any and all interests of the Prepetition ABL Agent in the Debtors' assets and properties shall terminate and the Debtors, their counsel and counsel to the DIP Agent and/or the Prepetition Term Facility Agent each are expressly and immediately authorized and empowered to execute and deliver, or record, applicable documents (which may include a copy of this Interim Order) evidencing the termination of such interests.

7.     *DIP Liens*.   As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of execution, recordation or filing by the Loan Parties or the DIP Agent of a copy of this Interim Order, other than on the docket of these Chapter 11 Cases, or any mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents or instruments, or the possession or control by the DIP Agent of, or over, any DIP Collateral (as defined below), the following security interests and liens (the "**DIP Liens**") are hereby granted to the DIP Agent for its own benefit and the ratable benefit of the DIP Lenders (all property identified in clauses (a), (b) and

EAST\124882458.3

(c) below being collectively referred to as the "**DIP Collateral**"), subject only to the Permitted Liens (as defined in the DIP Credit Agreement) and the payment of the Carve-Out; provided, however, that the DIP Liens shall not prime the Prepetition ABL Liens prior to the consummation of the ABL Facility Payoff (it being understood that this Interim Order requires the Debtors to consummate the ABL Facility Payoff on the Closing Date):

(a)     First Lien On Unencumbered Property.   Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first-priority senior security interest in and lien upon (i) all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with or controlled or possessed by the DIP Agent or otherwise), but excluding equity interests in direct non-U.S. subsidiaries of any Loan Party other than Pledged Foreign Equity (as defined in the DIP Credit Agreement) (such excluded equity interests, the "**Excluded Foreign Equity**"); and (ii) the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (collectively, "**Unencumbered Property**"), in each case other than: (x) the Excluded Foreign Equity, but subject to and effective upon entry of the Final Order including any proceeds of the Excluded Foreign Equity that do not otherwise constitute Excluded Foreign Equity; and (y) subject to and effective upon entry of the Final Order, the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**"), and any proceeds or property recovered pursuant to the Avoidance Actions, whether by judgment, settlement or otherwise (the "**Avoidance Proceeds**");

25

(b)      Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests in and liens upon all pre- and postpetition property of the Loan Parties, including, without limitation, following the consummation of the ABL Facility Payoff, the Debtors' right to reimbursement of the Payoff Cash Collateral in accordance with the Payoff Letter, that, (i) as of the Petition Date, is subject to valid, perfected and unavoidable liens; or (ii) is subject to unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case, (a) other than the Prepetition ABL Liens and the Prepetition Term Facility Liens, and (b) immediately junior to the liens identified in (i) and (ii) above, the "**Permitted Prior Liens**").

(c)      Liens Priming Certain Prepetition Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected, priming security interest in and lien upon all Prepetition Collateral (including, without limitation, Cash Collateral); provided that the interest in the Payoff Cash Collateral shall only be to the extent of the Debtors' right to reimbursement thereof in accordance with the Payoff Letter), which shall be senior in all respects to the applicable Prepetition Liens, and the Adequate Protection Liens, but shall not be senior to any Permitted Prior Liens that were senior in priority to the Prepetition Term Facility Liens and the Prepetition ABL Liens as of the Petition Date;

(d)      Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code; (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation,

any liens or security interests granted or deemed to exist in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties to the extent permitted or imposed by applicable law; or (C) any liens or security interests granted to secure intercompany obligations among Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.  Until such time as the ABL Facility Payoff is consummated, subject to the terms and conditions contained in this Interim Order, the Prepetition ABL Liens shall continue to secure the Prepetition ABL Obligations and be junior and subordinate solely to the ABL Permitted Liens, the Prepetition Term Facility Adequate Protection Liens (with respect to the Term Priority Collateral), and the Prepetition Term Facility Liens (with respect to the Term Priority Collateral to the extent set forth in the Intercreditor Agreement).

       8.    *DIP Superpriority Claims.*

       (a)    <u>Superpriority Claims</u>.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims of the DIP Agent for the benefit of the DIP Lenders against each the Loan Parties (without the need to file any proof or application for allowance of such claim, except to liquidate such claim) with priority over any and all claims against each of the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual

27

lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall be payable from, and have recourse to, all pre- and postpetition property of the Loan Parties and all proceeds thereof (including, effective upon entry of the Final Order, the Avoidance Actions and the Avoidance Proceeds), subject only to Permitted Prior Liens that were senior in priority to the Prepetition Term Facility Liens and the Prepetition ABL Liens as of the Petition Date on such property, and the Carve-Out.    The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

        (b)     <u>Carve-Out</u>.  For purposes hereof, the "**Carve-Out**" shall mean an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court (including fees and expenses of the noticing agent) and to the U. S. Trustee under section 1930(a) of title 28 of the United States Code <u>plus</u> interest at the statutory rate (without regard to the notice set forth in (iii) below and not included in the Post-EoD Carve-Out Amount); (ii) fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $20,000 (without regard to the notice set forth in (iii) below and not included in the Post-EoD Carve-Out Amount); and (iii) to the extent ultimately allowed by Final Order of the Court, claims for Professional Fees incurred by persons or firms retained by the Loan Parties or the Creditors' Committee   pursuant to sections 327 or 1103 of the Bankruptcy Code[7] (the "**Professional Persons**"), subject to (A) the terms of any interim or final compensation order entered by the Court and (B) any limits to use of DIP Loan proceeds or Cash Collateral imposed by the Interim Order or Final Order, including the Budget, or otherwise on Professional Fees to be incurred in connection with any investigations of claims and defenses against any Prepetition Secured

---

[7]    The fees and expenses of the Chief Restructuring Officer, individually and on account of fees and expenses reported in Staffing Reports filed by the Chief Restructuring Officer, shall be deemed a part of the Carve-Out.

Parties, that are incurred (x) at any time before delivery by the DIP Agent at the direction of the Required Lenders of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice to the extent that such Professional Fees do not exceed the amounts budgeted therefor in the Budget; and (y) after the occurrence and during the continuance of an Event of Default and delivery by the DIP Agent at the direction of the Required Lenders of written notice (the "**Carve-Out Trigger Notice**") thereof (which may be by email) to the Debtors, the Debtors' bankruptcy counsel, the U. S. Trustee, and counsel for the Creditors' Committee, if any, in an aggregate amount not to exceed $150,000 (the sum of the amounts set forth in clauses (i), (ii) and (iii)(y) being the "**Post-EoD Carve-Out Amount**"); provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii) or (iii) above, on any grounds.

(c)      Carve-Out Priority.  Notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition Obligations, the DIP Obligations and the Adequate Protection Obligations (as defined below).

(d)      Carve-Out Funding Limitation.      The Prepetition ABL Agent and Prepetition ABL Lenders shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements for any Professional Person,   including any Creditors'   Committee expenses incurred in connection with the Chapter 11 Cases or any successor case, or any other portion of the Post EoD Carve-Out Amount, and nothing in this Interim Order shall be construed to obligate the Prepetition ABL Agent or the Prepetition ABL Lenders in any way to pay any such compensation or reimburse any such expenses or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

9.     *Maintenance of Letters of Credit*.   To the extent permitted by the DIP Documents, the Loan Parties are authorized to maintain and renew, or obtain replacement, letters of credit issued or deemed issued under the Existing Agreements or the DIP Credit Agreement on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto on an uninterrupted basis.

10.    *Protection of DIP Lenders' Rights.*

(a)    <u>No Adverse Action</u>.   So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Prepetition ABL Secured Parties and the Prepetition Term Facility Secured Parties (as applicable) shall:  (i) have no right, and shall take no action, to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Existing Agreements or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the applicable Prepetition Collateral (except cash collateral held by the Prepetition ABL Agent pursuant to and subject to the terms of the Payoff Letter and this Interim Order); (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Prepetition Collateral except as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date (including, by way of example, due to transfer of agent); and (iii) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents reasonably necessary to effectuate and/or evidence the release, termination and/or assignment of liens on

30

any portion of such Collateral in connection with the ABL Facility Payoff and pursuant to the terms and conditions of the Payoff Letter.

(b) <u>Possession of DIP Collateral</u>.  To the extent the Prepetition ABL Agent or the Prepetition Term Facility Agent has possession of any Prepetition Collateral or DIP Collateral (excluding Payoff Cash Collateral deposited with the Prepetition ABL Agent in accordance with the Payoff Letter) or has control with respect to any Prepetition Collateral or DIP Collateral, then such Prepetition ABL Agent or Prepetition Term Facility Agent, as applicable, shall be deemed to possess or exercise such control solely for the purpose of perfection for the benefit of the DIP Agent and the DIP Lenders. The Prepetition Agents are not and shall not be deemed to be fiduciaries of any kind for the DIP Agent or the DIP Lenders, and the DIP Agent, on behalf of itself and the DIP Lenders, hereby waives and releases the Prepetition Agents from all claims and liabilities arising pursuant to any Prepetition Agent's role under this Paragraph 10(b) as gratuitous bailee and agent with respect to the Prepetition or DIP Collateral.  The Prepetition ABL Agent shall be permitted to retain and apply the Payoff Cash Collateral to the extent set forth in the Payoff Letter (subject to the notice provisions set forth therein).

(a) <u>Relief from Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to (a) take all actions necessary or desirable to implement the DIP Documents and the terms of this Interim Order and (b) unless the Court orders otherwise during the Remedies Notice Period (as defined below), and subject to the Carve-Out and the prior rights, remedies, claims and liens of the holders of the Permitted Prior Liens that were senior in priority to the Prepetition Term Facility Liens and the Prepetition ABL Liens as of the Petition

31

Date, (i) immediately upon the occurrence of an Event of Default under (and as defined in) the DIP Credit Agreement, declare (A) the termination, reduction or restriction of any further Commitment (as defined in the DIP Credit Agreement) to the extent any such Commitment remains (subject to the obligation to fund the Post-EoD Carve-Out Amount), (B) all DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (C) the termination of the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations); and (ii) upon the occurrence of an Event of Default and the giving of five (5) days' prior written notice via email to counsel to the Debtors, counsel to the Creditors' Committee, counsel to the Prepetition ABL Agent, counsel to Prepetition Term Facility Agent, and the U.S. Trustee (the "**Remedies Notice Period**") of the occurrence of an Event of Default, which shall run concurrently with any notice required to be provided under the DIP Documents, to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law. During the Remedies Notice Period, the Loan Parties shall be permitted to continue to use Cash Collateral in the ordinary course of business (subject to the terms of the DIP Documents) and to fund the Carve-Out. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby further vacated and modified to the extent (i) provided for in the Payoff Letter and (ii) necessary to permit the Prepetition ABL Agent to apply the Payoff Cash Collateral to the ABL Surviving Obligations in accordance with the Payoff Letter (and subject to the notice provisions set forth therein) without further order of Court.

(b)    <u>Waiver of Marshaling Doctrine and Equities of Case Exception</u>.  Subject only to, and effective upon, entry of the Final Order, (i) in no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or DIP Collateral; and (ii) in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(c)    <u>No Modification of Rights.</u>  No rights, protections or remedies of the DIP Agent or the DIP Lenders or the Prepetition Secured Parties granted by this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.    *Payment from Restricted Sources*.  Notwithstanding anything else in this Interim Order or in the Final Order, the Carve-Out, the Cash Collateral, the proceeds of the Prepetition Collateral, the Funding Account, or the DIP Financing (collectively, the "**Restricted Sources**") shall not be available for (a) payment of any fees or expenses incurred by any party in connection with  the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, suits, arbitrations, proceedings, applications, motions or other litigation of any type (i) adverse to any of (A) the DIP Secured Parties (whether in such capacity or otherwise), (B) the Prepetition ABL Secured Parties (whether in such capacity or otherwise),  (C) the Prepetition Term Facility Secured Parties (whether in such capacity or otherwise),  and (D) the Ad Hoc Group and each member thereof (whether in such

capacity or otherwise) or any of the affiliates, agents or representatives of the foregoing, or their respective rights and remedies under or in respect of the DIP Facility, the Prepetition Term Facility, the Prepetition ABL Facility, the Payoff Letter or any interim or final order with respect to the DIP Facility and the adequate protection granted to the Prepetition Secured Parties; (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Existing Agreements, including, in each case, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; or (iii) attempting to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral in accordance with the DIP Documents and the Interim Order or the Final Order, other than to seek a determination that an Event of Default has not occurred or is not continuing during the Remedies Notice Period; (b) any purpose that is prohibited under the Bankruptcy Code or the Interim Order and the Final Order; (c) making any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Budget, without the prior written consent of the Required Lenders; or (d) after delivery of a Carve-Out Trigger Notice, paying any success, completion, back-end or similar fees; provided that, notwithstanding anything to the contrary herein, the Creditors' Committee may use the Restricted Sources to investigate (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties as long as no more than an aggregate of $75,000 of the proceeds of the Restricted Sources may be used for the purposes set forth in the preceding proviso.

34

12.     *Limitation on Charging Expenses Against Collateral*.  Subject only to, and effective upon, entry of the Final Order, except to the extent of the Carve-Out, and funding of the Budget (subject to Permitted Variances), no costs or expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or DIP Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the Prepetition ABL Agent, or the Prepetition Term Facility Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Prepetition Collateral or the DIP Collateral, as applicable, under section 506(c) of the Bankruptcy Code or otherwise.

13.     *Intercompany Loans*.  The proceeds from the DIP Loans shall not be loaned or advanced to, or invested in (in each case, directly or indirectly), any entity that is not a subsidiary of a Debtor or DIP Guarantor; the proceeds from the DIP Facility loaned or advanced to, or invested in, any subsidiary of a Debtor or a DIP Guarantor shall be evidenced by an intercompany note, in form and substance reasonably satisfactory to the DIP Agent and the Required Lenders, for the full amount of the proceeds so loaned, advanced, or invested, the claim for which shall have administrative claim status under sections 503(b) and 507(a) of the Bankruptcy Code; such intercompany note shall be pledged to the DIP Agent, for the benefit of the DIP Lenders, to secure the DIP Obligations; and all intercompany liens of the Debtors and

35

the Guarantors, if any, will be subordinated to the liens securing the DIP Facility and the Adequate Protection Liens (as defined below) on terms satisfactory to the DIP Agent and the Required Lenders.

14. *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Interim Order or Final Order shall be received free and clear of any claim, charge, assessment or other liability.

15. *Use of Cash Collateral*.  The Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order and upon the consummation of the ABL Facility Payoff, to use all Cash Collateral.   Proceeds of all Collateral received by the Debtors in the ordinary course of business shall be deposited into the Funding Account, but shall not be required to be applied to prepay the DIP Loans (other than in connection with a voluntary or mandatory prepayment of DIP Loans contemplated by the DIP Credit Agreement), and shall thereafter be available to be withdrawn from the Funding Account and used by the Debtors, in each case subject to the terms and conditions of and otherwise in accordance with the DIP Loan Documents, including, without limitation, the Budget (subject to Permitted Variances).

16. *Adequate Protection of Prepetition Term Facility Secured Parties*.  Until the indefeasible discharge or release of the Prepetition Term Facility Obligations, the Prepetition Term Facility Secured Parties are entitled to, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, adequate protection of their interests in the Prepetition Term Facility Collateral, including Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Term Facility Secured Parties' valid, perfected and unavoidable prepetition security interests in the Prepetition Term Facility Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the

Bankruptcy Code, including, without limitation, any such diminution resulting from the sale, lease or use by the Loan Parties of the Prepetition Term Facility Collateral, payment of any amounts under the Carve-Out, the priming of the Prepetition Term Facility Agent's security interests and liens in the Prepetition Term Facility Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition Term Facility Adequate Protection Obligations**").   To secure the Prepetition Term Facility Adequate Protection Obligations, the Prepetition Term Facility Secured Parties are hereby granted the following:

(a)    <u>Prepetition Term Facility Adequate Protection Liens</u>.   The Prepetition Term Facility Agent (for itself and for the ratable benefit of the Prepetition Term Facility Lenders) is hereby granted (effective and perfected upon the entry of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) a valid, perfected senior replacement security interest in and lien upon all of the Prepetition Term Facility Collateral, subject and subordinate only to (i) the DIP Liens, (ii) the Permitted Prior Liens that were senior in priority to the Prepetition Term Facility Liens and the Prepetition ABL Liens as of the Petition Date, (iii) the ABL Adequate Protection Liens on the ABL Priority Collateral (as defined in the Intercreditor Agreement), and (iv) the Carve-Out (the "**Prepetition Term Facility Adequate Protection Liens**").

(b)    <u>Prepetition Term Facility Superpriority Claim</u>.   The Prepetition Term Facility Secured Parties are hereby granted an allowed superpriority administrative expense claim under section 507(b) of the Bankruptcy Code in respect of the Prepetition Term Facility Adequate Protection Obligations with priority in payment over any and all administrative

37

expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition Term Facility Superpriority Claim**"), subject and subordinate only to the Carve-Out, the DIP Superpriority Claims and the ABL Superpriority Claims (to the extent set forth in the Intercreditor Agreement).   The Prepetition Term Facility Superpriority Claim shall have recourse to and be payable from all of the Debtors' available assets, including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds.   Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition Term Facility Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Term Facility Superpriority Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claim having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all Commitments (as defined in the DIP Credit Agreement) have been terminated;

(c)    <u>Payment of Prepetition Amounts</u>.   On the Closing Date, notwithstanding Section 3.22 of the DIP Credit Agreement, the DIP Agent shall be authorized pursuant to a funding authorization letter from the Borrower to use the proceeds of the DIP Facility to pay all accrued but unpaid reasonable and documented fees and expenses of counsel and financial advisors to each of (i) the Prepetition Term Facility Agent, (ii) the Ad Hoc Group, and (iii) the members of the Ad Hoc Group;

(d)    <u>Periodic Payments</u>.   As additional adequate protection, the Debtors shall make periodic payments in cash of the reasonable and documented fees and expenses of counsel and financial advisors to the Prepetition Term Facility Agent and the Ad Hoc Group and its members (including fees, expenses and disbursements of one primary counsel, one local counsel

38

and one financial advisor to each of the Prepetition Term Facility Agent and the Ad Hoc Group),

notwithstanding anything to the contrary in the Prepetition Term Facility Credit Agreement, and

otherwise in accordance with the Prepetition Term Facility Credit Agreement and the DIP Credit

Agreement.  All payments of fees, expenses and disbursements authorized under this Paragraph

16(d) shall be made within ten (10) days (which time period may be extended for all or any one

of the reviewing parties by agreement of the applicable professional or further order of the

Court) (the "**Review Period**") after the receipt by the Debtors, the Creditors' Committee and the

U.S. Trustee of summary invoices therefor (the "**Invoiced Fees**") and without the necessity of

filing formal fee applications.  The invoices for such Invoiced Fees shall include the total

aggregate number of hours billed and a summary description of services provided and the

expenses incurred by the applicable professional; provided, however, that any such invoice may

be redacted to protect privileged, confidential or proprietary information.  The Debtors, the

Creditors' Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the

"**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other

pleading, on at least ten (10) days' prior written notice to the Prepetition Term Facility Secured

Parties of any hearing on such motion or other pleading, setting forth the specific objections to

the Disputed Invoiced Fees.  The Debtors shall pay (i) any Invoiced Fees that are not Disputed

Invoiced Fees within one (1) business day after expiration of the Review Period; and (ii) any

Disputed Invoiced Fees within three (3) business days after approval by the Court by a final

order requiring payment of any previously Disputed Invoiced Fees.

      (e)     <u>Accrual of Prepetition and Postpetition Interest</u>.  All interest on the loans

under the Prepetition Term Facility Credit Agreement, including accrued and unpaid interest as

of the Petition Date and interest accruing thereafter, shall not be paid currently, but shall

continue to accrue, at the Default Rate (as defined in the Prepetition Term Facility Credit Agreement), and, to the extent permitted under the Bankruptcy Code and by the Court, be deemed part of the Prepetition Term Facility Secured Parties' secured claim for all purposes, including for purposes of any credit bid under section 363(k) of the Bankruptcy Code.

17.     *Adequate Protection of Prepetition ABL Facility Secured Parties*.    As adequate protection of the Prepetition ABL Secured Party's interest in the Prepetition ABL Collateral to secure the ABL Surviving Obligations, the Prepetition ABL Agent is granted valid and perfected replacement and additional security interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral, subject to and in accordance with the lien priorities otherwise set forth in this Interim Order and the Intercreditor Agreement (the "**ABL Adequate Protection Liens**"; together, with the Prepetition Term Facility Adequate Protection Liens, the "**Adequate Protection Liens**").  The ABL Adequate Protection Liens shall secure only the ABL Surviving Obligations and shall be senior in all respects to the Prepetition Term Facility Adequate Protection Liens on any DIP Collateral otherwise constituting ABL Priority Collateral.   The ABL Adequate Protection Liens are and will be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the ABL Permitted Liens; (iii) the Prepetition Term Facility Adequate Protection Liens (only on any DIP Collateral otherwise constituting Term Priority Collateral), and (iv) the Carve-Out.   Notwithstanding the foregoing, to the extent that the Prepetition Term Facility Secured Parties and/or the DIP Secured Parties (or their respective designees) submit a credit bid in connection with the Sale (as defined below) and the Prepetition Term Facility Secured Parties and/or the DIP Secured Parties (or their respective designees) are selected as the winning bidder(s), the Prepetition ABL Secured Parties will not object to the purchase by the Prepetition

Term Facility Secured Parties and/or the DIP Secured Parties (or any of their respective designees) of the property at issue in the Sale free and clear, pursuant to section 363(f) of the Bankruptcy Code, of any interest in such property of an entity other than the Debtors' estates, including, without limitation,  the ABL Adequate Protection Liens; provided that, for the avoidance of doubt, (i) any such Sale shall not be free and clear of the Prepetition ABL Secured Parties' interests in the Payoff Cash Collateral in accordance with the Payoff Letter; and (ii) the ABL Adequate Protection Liens, if any, shall attach to the cash proceeds, if any, of such Sale.

(a)     Treatment of ABL Adequate Protection Liens.  Other than as set forth herein or as further ordered by the Court, the ABL Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases.   The ABL Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any successor cases, upon the conversion of any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other successor case), or upon the dismissal of any of the cases of successor cases.

(b)     Superpriority Claim of Prepetition ABL Agent.  As further adequate protection of the interest of the Prepetition ABL Agent with respect to the ABL Surviving Obligations, the Prepetition ABL Agent is hereby granted an allowed administrative claim against the Debtors' estates under Sections 503 and 507(b) of the Bankruptcy Code (the "**ABL Superpriority Claims**") to the extent that the ABL Adequate Protection Liens granted to the Prepetition ABL Agent do not adequately protect the Prepetition ABL Secured Parties with respect to the ABL Surviving Obligations.   Such ABL Superpriority Claims shall be junior to the Carve-Out, the DIP Liens, the DIP Superpriority Claim and the Prepetition Term Facility

41

Superpriority Claim (solely to the extent set forth in the Intercreditor Agreement), and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Section 503(b) and 507(b) of the Bankruptcy Code.

18.    *Reservation of Rights Regarding Adequate Protection*.    Under the circumstances and given that the above-described adequate protections are consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; provided that the Prepetition Secured Parties, upon a material change in circumstances, may request further or different adequate protection, and the Debtors or any other party in interest with standing may contest any such request.

19.    *Notice of Perfection of DIP Liens and Adequate Protection Liens.*

(a)    Deemed Perfection Without Further Action.    Whether or not the DIP Agent, on behalf of the DIP Lenders, or the Prepetition Secured Parties (with respect to the applicable Adequate Protection Liens granted in Paragraphs 16 and 17 above) shall, in their discretion or at the written direction of the Required Lenders, choose to file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.

(b)    Authority to Take Action to Further Provide Notice of Automatically Perfected Liens.    The DIP Agent, the DIP Lenders and the Prepetition Secured Parties (with respect to the applicable Adequate Protection Liens) are hereby authorized, but not required, to

42

file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and further to provide notice of the perfection of the liens and security interests granted to them hereunder and automatically perfected hereby.  Upon the request of the DIP Agent, the Prepetition ABL Agent or the Prepetition Term Facility Agent, as applicable, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Facility Agent to further validate, preserve and enforce the DIP Liens and the applicable Adequate Protection Liens, respectively.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)    <u>Perfection by Certified Copy of Order</u>.  A certified copy of this Interim Order may, in the discretion of the DIP Agent, the Prepetition ABL Agent, or the Prepetition Term Facility Agent, as applicable, or at the express written direction of any of the Required Lenders thereunder, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all applicable filing and recording offices are hereby authorized to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Facility Agent to take all actions, as applicable, referenced in this Paragraph 19.

20.    *Preservation of Rights Granted Under This Interim Order.*

(a)    <u>No Superior or *Pari Passu* Liens</u>.    Other than the Carve-Out and the Permitted Prior Liens that were senior in priority to the Prepetition Term Facility Liens and the Prepetition ABL Liens as of the Petition Date, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders, the Prepetition Term Facility Secured Parties (except for the DIP Liens and the DIP Superpriority Claims), and the Prepetition ABL Secured Parties, shall be granted or allowed while any of the DIP Obligations, the Prepetition Term Facility Adequate Protection Obligations, or the ABL Surviving Obligations remain outstanding; and the DIP Liens, the Prepetition Term Facility Adequate Protection Liens, and the ABL Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; or  subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    <u>Events of Default</u>.    Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitments have been terminated, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Facility and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Required Lenders (as defined in the DIP Credit Agreement) or the DIP Agent, seeks, proposes or supports, or if there is entered or confirmed (in each case, as applicable): (i) any modifications, amendments or extensions of this Interim Order, and no such consent shall be implied by any action, inaction or acquiescence by any party; (ii) an order converting or dismissing any of these Chapter 11 Cases; (iii) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; (iv) an order appointing an examiner with enlarged powers in any of the

Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); or (v) the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent obligations for which no claim has been asserted by the DIP Agent or DIP Lenders) upon the consummation thereof.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Superpriority Claims, the Prepetition Term Facility Superpriority Claim, the ABL Superpriority Claim,  the DIP Liens, the Prepetition Term Facility Adequate Protection Liens, and the ABL Surviving Obligations and the Carve-Out shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations,  Prepetition Term Loan Facility Adequate Protection Obligations, ABL Surviving Obligations and the Carve-Out, as applicable, shall have been indefeasibly paid in full in cash; (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

        (c)     <u>Survival Upon Reversal</u>.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations, Prepetition Term Loan Facility Adequate Protection Obligations, or ABL Surviving Obligations incurred prior to the actual receipt of written notice by the DIP Agent or either Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens, the Prepetition Term Facility Adequate

45

Protection Liens, and the ABL Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations or Prepetition Term Loan Facility Adequate Protection Obligations, or the ABL Surviving Obligations incurred by the Loan Parties prior to the actual receipt of written notice by the DIP Agent or a Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order, the Payoff Letter, and the DIP Documents.

(d)     <u>Survival in Successor Cases</u>.  Except as expressly provided in this Interim Order, the Payoff Letter, or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Prepetition Term Facility Adequate Protection Liens, the ABL Adequate Protection Liens, the Prepetition Term Facility Superpriority Claim, the ABL Superpriority Claim and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents (including the Prepetition Term Loan Facility Adequate Protection Obligations and the ABL Surviving Obligations) shall survive, and shall not be modified, impaired or discharged in any successor cases if these cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

21.    *Effect of Stipulations on Third Parties*.

(a)    <u>Binding on Debtors</u>.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph 4 of this Interim Order, shall be binding upon the Debtors in all circumstances and for all purposes.

(b)    <u>Binding on Third Parties</u>.    The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph 4 of this Interim Order, shall be binding upon their estates and all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless the following three criteria are satisfied:

(i)    <u>Challenge Period</u>.  Such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so, a "**Challenge Party**"), in each case, with requisite standing granted by the Court, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in Paragraph 21(b)(v), by no later than a date that is, consistent with Local Rule 4001-2(a)(i)(B), the later of (x) the date that is the later of 75 days after entry of this Interim Order and 60 days after appointment of the Creditors' Committee; (y) any such later date as has been agreed to, in writing, by the Prepetition Term Facility Agent (at the written direction of the Required Lenders thereunder) or the Prepetition ABL Agent (as applicable, and solely with respect to a potential Challenge Proceeding against such party), without further order of the Court; and (z) any such later date as has been ordered by the Court

for good cause shown upon a motion filed and served within any applicable period of time set forth in this paragraph (the "**Challenge Period**").

(ii) <u>Challenge Proceeding</u>.  Such adversary proceeding or contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "**Challenge Proceeding**") against any Prepetition Secured Party, or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Agreements, the Prepetition Obligations, the Prepetition Liens and the Prepetition Collateral.

(iii) <u>Final Non-Appealable Order</u>.  A final non-appealable order is entered in favor of the plaintiff in any such Challenge Proceeding; <u>provided</u>  that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred;  and <u>provided</u> <u>further</u>, that nothing contained herein shall preclude or otherwise limit the rights of the Creditors' Committee or any party to seek to intervene, or to appear and be heard under 11 U.S.C. § 1109(b).

(iv) <u>Agreement to Not Assert a Challenge</u>.  Notwithstanding the foregoing, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties hereby agree not

to (and hereby waive any right to) take any action to contest or challenge (or assist or support any other person in contesting or challenging), directly or indirectly, the extent, validity, priority, enforceability or perfection of the Prepetition ABL Obligations, the Prepetition Term Facility Obligations, the Prepetition ABL Liens, of the Prepetition Term Facility Liens.

(v)     Failure to File Challenge Proceeding.   If no Challenge Proceeding is timely and properly filed during the Challenge Period with respect to (i) the Prepetition Term Facility Obligations or Liens or (ii) the Prepetition ABL Obligations or Liens, as applicable, or the Court does not rule in favor of the plaintiff in any such proceeding then: (i) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order relating thereto, including, without limitation, those contained in Paragraph 4 of this Interim Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (ii) the obligations of the Loan Parties under the Existing Agreements, including the Prepetition Term Facility Obligations or Prepetition ABL Obligations, as applicable, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases, and any subsequent chapter 7 case(s); (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; (iv) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates;  and (v) any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the

49

Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties arising out of or relating to the Existing Agreements shall be deemed forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, the applicable stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Existing Agreements, the Prepetition Obligations or the Prepetition Liens; and any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceedings, and any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released and barred.

22.    *Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

23.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP

50

Lenders, the Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns.

24.    *Limitation of Liability*.    In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders and the Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

25.    *Prepetition Term Facility and Prepetition ABL Facility Master Proofs of Claim*.    In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition  ABL Agent and the Prepetition Term Facility Agent are each authorized to file in the Debtors' lead Chapter 11 Case—*In re Vertellus Specialties Inc.* (Case No. 16-11290)—a single, master proof of claim on

51

behalf of the Prepetition Term Facility Secured Parties and the Prepetition ABL Secured Parties**,** as applicable, on account of any and all of their respective claims arising under the applicable Existing Agreements and hereunder (each, a "**Master Proof of Claim**"), which shall be deemed asserted against each of the Debtors.  Upon the filing of a Master Proof of Claim, insofar as deemed asserted against each of the Debtors, the Prepetition Term Facility Agent and Prepetition Term Facility Secured Parties, and the Prepetition ABL Agent and the Prepetition ABL Secured Parties, as applicable, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims (which names may be redacted in the publicly filed version of the Proof of Claim) against each of the Debtors of any type or nature whatsoever with respect to the applicable Existing Agreements, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Term Facility Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this Paragraph 25 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Term Facility Secured Parties or the Prepetition ABL Secured Parties, as applicable, which

instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition Term Facility Agent or the Prepetition ABL Agent, as applicable. Notwithstanding the foregoing (or the entry of any order establishing a bar date for claims), none of the Prepetition Agents or Prepetition Secured Parties will be required to file proofs of claim or requests for approval of administrative expenses in any of the Chapter 11 Cases or successor cases, and the provisions of this Interim Order relating to the amount of the Prepetition Obligations or the Prepetition Liens shall constitute timely filed proofs of claim or administrative expense requests, as applicable.

26.    *Insurance*.  Subject to consummation of the ABL Facility Payoff, to the extent that any of the Prepetition ABL Agent and the Prepetition Term Facility Agent is listed as loss payee or an additional insured under any of the Loan Parties' insurance policies, the DIP Agent is also deemed to be the loss payee or an additional insured under such insurance policies and shall act in such capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and second, to the payment of the Prepetition Obligations (subject to determining whether the proceeds relate to Prepetition ABL Collateral or Prepetition Term Facility Collateral).

27.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

29.    *Payments Held in Trust*.    Except as expressly permitted in this Interim Order, the Payoff Letter, or the DIP Documents, including upon the consummation of the ABL Facility Payoff, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

30.    *Credit Bidding*.  Subject to the express written direction of the Required Lenders (as defined in the DIP Credit Agreement) and the terms of the DIP Documents, the DIP Lenders, through either the DIP Agent or a special purpose entity established by the Required Lenders to hold, among other assets, the DIP Obligations and the DIP Liens, shall have the right to credit bid, as provided for in section 363(k) of the Bankruptcy Code, some or all of the DIP Obligations in any sale of the DIP Collateral  (or any part thereof), including as contemplated by the motion seeking approval of bidding procedures for a sale of all or substantially all of the Debtors' assets (the "**Sale**") filed on the Petition Date, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b)

of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

31.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

32.    *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

33.    *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and any and all of the documents approved hereunder, including, without limitation, the DIP Documents and the Payoff Letter (as to, among other issues, any contractually mandated return of Payoff Cash Collateral to the Debtors), and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

34.    *Final Hearing*.  The Final Hearing is scheduled for June [_], 2016 at ____ __.m. before this Court.

35.    *Objections*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) proposed counsel for the Debtors, DLA Piper LLP (US), 203 North LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Richard A. Chesley, Esq.) and 1201 North Market Street, Suite 2100, Wilmington, Delaware 19801 (Attn:  Stuart M. Brown, Esq.); (b) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King St., Lockbox 35, Wilmington, DE 19801 ( Attn: Juliet Sarkessian, Esq.); (c) counsel to the Prepetition Term Facility Lenders and the DIP Lenders, Milbank, Tweed, Hadley & McCloy LLP (Attn: Mark Shinderman,  Esq.,

Peter Newman, Esq., and Dennis C. O'Donnell, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE  19801 (Attn: Laura Davis Jones, Esq.); (d) counsel to the Prepetition Term Facility Agent and the DIP Agent, Kaye Scholer LLP, Three First National Plaza, 70 West Madison Street, Suite 4200, Chicago, Illinois 60602 (Attn: Michael Messersmith, Esq. and Seth Kleinman, Esq.) and Pepper Hamilton LLP, 1313 Market Street, Suite 5100, Wilmington, DE 19899 (Attn: David Fournier, Esq.); (e) counsel to the Creditors' Committee; (f) counsel to the Prepetition ABL Agent, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603 (Attn: Randall Klein, Esq. and Danielle Juhle, Esq.) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801 (Attn: Regina Stango Kelbon, Esq.; (g) all parties entitled to notice pursuant to Local Rule 9013-1(m), in each case to allow actual receipt by the foregoing no later than June [_], 2016 at 4:00 p.m., prevailing Eastern Time.

36.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code and liens on Avoidance Actions) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated:    June [__] , 2016
          Wilmington, Delaware



                                        UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**(Budget)**

| Petition Date | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Exit Date | | | | | | | | | | | | | |

| Week Ended ($'MMs) | FCST 6/3/2016 | FCST 6/10/2016 | FCST 6/17/2016 | FCST 6/24/2016 | FCST 7/1/2016 | FCST 7/8/2016 | FCST 7/15/2016 | FCST 7/22/2016 | FCST 7/29/2016 | FCST 8/5/2016 | FCST 8/12/2016 | FCST 8/19/2016 | FCST 8/26/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance at PNC | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 | 2.5 |
| **Sources of Cash** | | | | | | | | | | | | | |
| Domestic AR Receipts | 5.7 | 3.9 | 4.1 | 8.7 | 9.1 | 7.7 | 6.9 | 6.9 | 6.9 | 6.3 | 6.3 | 6.3 | 6.3 |
| EU Cash Receipts from Belgian Trading Entity | - | - | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 |
| China Cash Receipts | - | - | 0.4 | - | - | - | - | 1.4 | - | - | - | 0.4 | - |
| VPC | - | - | - | - | - | 0.1 | - | - | - | - | - | - | - |
| **Total Sources** | **$ 5.7** | **$ 3.9** | **$ 5.0** | **$ 9.2** | **$ 9.6** | **$ 8.3** | **$ 7.4** | **$ 8.7** | **$ 7.4** | **$ 6.8** | **$ 6.8** | **$ 7.2** | **$ 6.8** |
| **Uses of Cash** | | | | | | | | | | | | | |
| Vendor Payments | (4.5) | (3.5) | (3.8) | (5.1) | (3.5) | (3.5) | (4.8) | (4.9) | (4.5) | (4.5) | (4.8) | (4.5) | (7.4) |
| Employee-Related Costs | (1.0) | (0.6) | (1.9) | (0.6) | (1.9) | (0.6) | (2.4) | (0.6) | (1.9) | (0.6) | (2.2) | (0.6) | (0.6) |
| Interco Payments – China | - | - | - | (0.4) | - | - | - | (0.9) | - | - | - | - | (1.2) |
| Interco Payments – VPC [3] | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Costs | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) |
| **Total Operating Disbursements** | **$ (5.7)** | **$ (4.4)** | **$ (5.9)** | **$ (6.3)** | **$ (5.7)** | **$ (4.3)** | **$ (7.4)** | **$ (6.6)** | **$ (6.6)** | **$ (5.3)** | **$ (7.3)** | **$ (5.3)** | **$ (9.5)** |
| **Restructuring-Related Items** | | | | | | | | | | | | | |
| Critical Vendor Payments | - | (1.0) | (1.0) | (1.0) | (1.0) | (1.0) | - | - | - | - | - | - | - |
| 503(b)9 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees – Restructuring | - | - | - | - | (1.3) | - | - | - | (0.1) | (1.1) | (0.1) | (0.1) | (1.4) |
| Utility Deposits | - | - | (0.4) | (0.4) | (0.4) | - | - | - | - | - | - | - | - |
| Financing and Interest – Restructuring | (3.6) | - | - | - | (0.9) | - | - | - | - | (0.9) | - | - | - |
| Cure Costs & Other | - | - | - | - | - | - | - | - | - | - | - | - | - |
| KEIP/KERP | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Restructuring-Related Items** | **$ (3.6)** | **$ (1.0)** | **$ (1.4)** | **$ (1.4)** | **$ (3.6)** | **$ (1.0)** | **$ -** | **$ -** | **$ (0.1)** | **$ (2.1)** | **$ (0.1)** | **$ (0.1)** | **$ (1.4)** |
| **Net Cash Flow** | **($3.7)** | **($1.5)** | **($2.3)** | **$1.5** | **$0.3** | **$2.9** | **($0.0)** | **$2.1** | **$0.7** | **($0.6)** | **($0.6)** | **$1.8** | **($4.0)** |
| | | | | | | | | | | | | | |
| Ending Cash Before Draw/(Sweep) | ($1.2) | $1.0 | $0.2 | $4.0 | $2.8 | $5.4 | $2.5 | $4.6 | $3.2 | $1.9 | $1.9 | $4.3 | ($1.5) |
| Draw/(Sweep) | $3.7 | $1.5 | $2.3 | ($1.5) | ($0.3) | ($2.9) | $0.0 | ($2.1) | ($0.7) | $0.6 | $0.6 | ($1.8) | $4.0 |
| **Ending Cash Balance at PNC** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** | **2.5** |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP Funding | 110.0 | | | | | | | | | | | | |
| ABL Loan pay-off | (63.3) | | | | | | | | | | | | |
| Reserve for LCs | (19.6) | | | | | | | | | | | | |
| Initial Draw | (2.5) | | | | | | | | | | | | |
| **Funding Account Balance** | **24.6** | **21.0** | **19.5** | **17.2** | **18.7** | **19.0** | **22.0** | **22.0** | **24.1** | **24.7** | **24.1** | **23.5** | **25.3** | **21.2** |