**<u>Exhibit F</u>**

**(Payoff Letter)**

June [__], 2016

Vertellus Specialties Inc.
Vertellus Agriculture & Nutrition Specialties LLC
Vertellus Health & Specialty Products LLC
Vertellus Performance Materials Inc.
Vertellus Specialties PA LLC
Vertellus Specialties MI LLC
Rutherford Chemicals LLC
201 North Illinois Street, Suite 1800
Indianapolis, Indiana  46204

Re:    **Vertellus Specialties Inc.,** *et al*

Ladies and Gentlemen:

Reference is hereby made to (i) that certain Amended and Restated Revolving Credit and Security Agreement dated as of October 31, 2014 (as amended, supplemented, extended, renewed, restated, replaced or otherwise modified from time to time, the "Loan Agreement"; unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Loan Agreement) by and among Vertellus Specialties Inc., an Indiana corporation ("VSI"), Vertellus Agriculture & Nutrition Specialties LLC, a Delaware limited liability company ("VANS"), Vertellus Health & Specialty Products LLC, a Delaware limited liability company ("VHSP"), Vertellus Performance Materials Inc., a North Carolina corporation ("VPMI"), Vertellus Specialties PA LLC, a Delaware limited liability company ("VSPA"), Vertellus Specialties MI LLC, a Delaware limited liability company ("VSMI"), Rutherford Chemicals LLC, a Delaware limited liability company ("RC"; together with VSI, VANS, VHSP, VPMI, VSPA, VSMI and RC, collectively, the "Borrowers" and each individually a "Borrower"), Vertellus Specialties Holdings Corp., as a guarantor ("Holdings"; together with the Borrowers, collectively the "Loan Parties" and each individually a "Loan Party"), the financial institutions party thereto (the "Lenders") and PNC Bank, National Association ("PNC"), as administrative agent and collateral agent pursuant to the Loan Agreement and the Other Documents (PNC, in such capacity, together with its successors and assigns in such capacity, the "Agent"), and (ii) that certain order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered in the cases of the Loan Parties and certain affiliates, jointly administered under Chapter 11 of the Bankruptcy Code bearing case number 16-[____] (the "Cases"), after an interim hearing (assuming satisfaction of the standards prescribed in Section 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law), which order is in effect and not stayed, in the form attached as Exhibit A (the "Financing Order").

Agent has been informed by Loan Parties that Loan Parties will be entering into a transaction and in connection therewith all of the Obligations, other than the Surviving Obligations (as defined below), will be satisfied and discharged.  If received by 2:00 p.m. (Chicago time) on June [__], 2016, the amount necessary to pay or otherwise satisfy and discharge in full all of the Obligations (other than the Surviving Obligations) is $[_____] (the

"Payoff Amount") (provided, that such Payoff Amount shall be increased by a per diem amount of $[_____] (the "Per Diem") for each day after 2:00 p.m. (Chicago time) on June [__], 2016 until the Payoff Date (as defined below), in respect of daily accruals of interest and fees in accordance with the Loan Agreement. "Surviving Obligations" means (i) the obligations of the Loan Parties under the Loan Agreement and Other Documents (including indemnification obligations) that by the terms of the Loan Agreement and Other Documents survive the termination of the Loan Agreement, (ii) the obligations of the Loan Parties under this letter agreement (this "Payoff Letter") to reimburse Agent and the Lenders for fees, costs, and expenses that may become due and payable after the Payoff Date pursuant hereto, (iii) until any and all Cash Management Products and Services are terminated or replaced in a manner satisfactory to Agent, Cash Management Liabilities arising after the date hereof, and (iv) the obligations of the Loan Parties under the Loan Agreement and Other Documents in respect of outstanding Letters of Credit issued by Agent or Lenders, including, without limitation, all fees, charges, costs and expenses with respect thereto (collectively, the "Letter of Credit Obligations").

This Payoff Letter will confirm that immediately and automatically upon (A) receipt by Agent by wire transfer of (i) the Payoff Amount plus the Per Diem, if any, (ii) cash collateral in the amount of $[**19,569,594.45**] (the "L/C Cash Collateral") to secure the Letter of Credit Obligations, (iii) cash collateral in the amount of $100,000 (together with the current legal reserve in the amount of $150,000, the "Indemnification Cash Collateral") to secure the Loan Parties' obligation to reimburse Agent and Lenders for fees, costs, and expenses incurred in connection with Surviving Obligations, and (iv) cash collateral in the amount of $2,500,000 (together with the $100,000 of cash collateral remitted to Agent in accordance with that certain First Amendment to Forbearance Agreement dated as of May 25, 2016, the "Cash Management Cash Collateral") to secure the outstanding Cash Management Liabilities and hereafter arising Cash Management Liabilities (the total of the Payoff Amount, the L/C Cash Collateral, Indemnification Cash Collateral and Cash Management Cash Collateral is $[_____] (provided, that such amount shall be increased by the Per Diem, if any)), to the following account:

PNC BANK, N.A.
ABA 043000096
Credit: Agency Services Wire Process Account
A/C No.:  130760017005
Ref   Vertellus Specialties

and (B) receipt by Agent of a copy of this agreement duly executed by the Loan Parties (the deliveries described in the foregoing clauses (A) and (B), the "Payoff Deliveries"), (x) the liens and security interests of Agent and any other holder of Obligations (collectively, the "Secured Parties") in any and all of the property of Loan Parties shall be released and terminated (other than (i) as provided for in the Financing Order and (ii) with respect to the L/C Cash Collateral, the Indemnification Cash Collateral, and the Cash Management Cash Collateral), (y) other than the Surviving Obligations, all liabilities, obligations and indebtedness of or owing by any or all of the Loan Parties under the Loan Agreement and any other ABL Documents (as defined in the Intercreditor Agreement), shall be satisfied and discharged in full and (z) the Discharge of ABL Obligations (as defined in the Intercreditor Agreement) shall occur; provided, that nothing herein shall be deemed to constitute a termination of the agreements related to the Cash Management Products and Services.  The date that all of the Payoff Deliveries are received by Agent is the

"Payoff Date".  If the assumptions set forth with respect to the calculation of any amount set forth in clause (A) above is not correct, Agent will notify Loan Parties in writing before the Payoff Date of the appropriate changes in such amounts and, to the extent permitted by the Financing Order, such adjusted amounts shall be required to be paid hereunder.  This letter shall not be effective if all of the Payoff Deliveries are not received by Agent on or before 2:00 p.m. (Chicago time), June 3, 2016.  With immediate effect upon receipt by the Agent of all of the Payoff Deliveries on the Payoff Date, Agent (i) hereby irrevocably authorizes the Loan Parties and their designees to terminate the UCC Financing Statements listed on Exhibit B attached hereto, (ii) shall promptly execute (if applicable) and deliver to Borrowers (or to their designee) any other termination statements and mortgage releases, as applicable, pertaining to any liens and security interests of any Secured Parties in any of the property of Loan Parties, as Borrowers may reasonably request, in connection with Agent's above-described release and termination of its security interests and liens, and (iii)  shall deliver to the DIP Agent, as described and defined in the Financing Order, all collateral in Agent's possession and listed on Exhibit C on the Payoff Date (or such later date as may be agreed by the Borrowers).  Loan Parties shall reimburse Agent, reasonably promptly following written demand therefor, for any reasonable, customary and documented out-of-pocket costs and expenses incurred by Agent after the Payoff Date in connection with the release and termination of its liens as provided herein.  Loan Parties shall continue to be obligated with respect to the Surviving Obligations.

Each Loan Party acknowledges and agrees that:

(i)     (A) the Payoff Deliveries referred to above are enforceable obligations of the Loan Parties payable to Agent (for its own account or the account of any applicable Secured Party) and (B) the Surviving Obligations are enforceable obligations of the Loan Parties payable to Agent (for its own account or the account of any applicable Secured Party), in each case pursuant to the provisions of the Loan Agreement and the Other Documents, without any deduction, offset, defense or counterclaim;

(ii)     prior to the Payoff Date, nothing contained herein shall constitute a waiver of any Default or Event of Default or of Agent's and the Lenders' rights and remedies under the Loan Agreement and the Other Documents; and

(iii)     as of the Payoff Date, Agent, the Lenders and their respective participants, if any, shall have no further (A) commitment to provide loans or letters of credit or other financial accommodations under the Loan Agreement and the Other Documents or (B) obligation, duty or responsibility under the Loan Agreement, any Other Document or any other document or agreement executed and/or deliver in connection therewith, other than as expressly provided in this Payoff Letter.

In the event that in calculating the Payoff Amount, Agent gave credit to any check or other item of payment received from Loan Parties or constituting proceeds of Collateral by applying the amount thereof to the Obligations and such check or other item of payment is subject to a claim or refund, or is reversed or returned for any reason (including insufficient funds or non-payment), the Loan Parties jointly and severally agree to reimburse and pay, promptly following written demand (which demand shall indicate in reasonable detail the basis for such demand), to Agent the amount of any such check or other item of payment, together

with any out-of-pocket losses, liabilities, charges, expenses and fees associated therewith. Loan Parties jointly and severally further agree to reimburse and pay, promptly following written demand (which demand shall indicate in reasonable detail the basis for such demand), to Agent (i) any amounts required to be paid by Agent, whether as an indemnification payment or otherwise, under any lockbox, blocked account or account control arrangement entered into by Agent in connection with the Loan Agreement and the Other Documents, together with any out-of-pocket losses, liabilities or charges, or reasonable and documented expenses and fees, in each case associated therewith, (ii) any amounts which Agent and the Lenders may have incurred or may now or hereafter incur in connection with the transactions contemplated hereby which have not as yet been reflected in Loan Parties' loan accounts which Loan Parties are, or may be, required to bear pursuant to the Loan Agreement and the Other Documents and/or (iii) any amounts which Agent and the Lenders may incur as a result of errors in calculation of any amounts due Agent and the Lenders by Loan Parties.

The L/C Cash Collateral, Indemnification Cash Collateral, and Cash Management Cash Collateral shall be held in an account (the "Cash Collateral Account") in the name of Agent. Each Loan Party hereby grants to Agent, for the benefit of itself, any providers of Cash Management Products and Services, and any Issuer of any Letter of Credit, a security interest in and lien upon the L/C Cash Collateral, Indemnification Cash Collateral, and the Cash Management Cash Collateral and all proceeds thereof, if any, to satisfy the estimated credit exposure with respect to the Cash Management Liabilities, Letter of Credit Obligations and obligation to reimburse Agent and Lenders for costs and expenses that may become due and payable after the Payoff Date. Amounts held in the Cash Collateral Account may be commingled with other funds and may be invested at the option and sole discretion of Agent. Agent shall have the rights and remedies of a secured party under the Uniform Commercial Code in respect of the L/C Cash Collateral, Indemnification Cash Collateral, and the Cash Management Cash Collateral and shall be entitled to debit the Cash Collateral Account at any time to satisfy the Surviving Obligations then due and payable. Agent agrees to (a) provide notice to the Loan Parties reasonably promptly upon the debit of the Cash Collateral Account related to the drawing of any Letter of Credit; provided, however, that the failure to provide notice shall not affect Agent's right to debit such Cash Collateral, and (b) that Agent's right to debit the Cash Collateral Account on account of the Indemnification Cash Collateral shall be subject to compliance the procedures substantially similar to that applicable to the Prepetition Term Facility Agent in Paragraph 16(d) of the Financing Order.

Upon the expiration and return of an original Letter of Credit, the cancellation and return of an original Letter of Credit or the drawing of a Letter of Credit issued by Agent, and after the payment of all Letter of Credit Obligations related thereto, within five (5) Business Days thereof, Agent shall remit the remaining portion of such L/C Cash Collateral related to the applicable Letter of Credit so expired, cancelled or drawn that is in the Cash Collateral Account to the Borrowers. Agent shall return any remaining portion of the Indemnification Cash Collateral to Borrowers, net of any amounts payable on account of any other Surviving Obligations (other than Letter of Credit Obligations) then due, upon the later of (x) ten (10) Business Days after the expiration of the Challenge Period (as defined in the Financing Order) if no Challenge Proceeding (as defined in the Financing Order) has been asserted and (y) ten (10) Business Days after the entry of a final, non-appealable order resolving all asserted Challenge Proceedings. Any funds transferred to Borrowers (or their designee) from Agent pursuant to this

paragraph shall be by wire transfer of immediately available funds to such account as is designated in writing to Agent by Borrowers.  Agent shall remit to Borrowers any Cash Management Cash Collateral remaining in the Cash Collateral Account in excess of $100,000 within ten (10) Business Days following the date on which all of the Cash Management Products and Services have been terminated in a manner satisfactory to Agent, and shall remit the remaining Cash Management Cash Collateral (if any) to Borrowers within ten (10) Business Days following the last day of the first full month after the termination of the Cash Management Products and Services after applying such Cash Management Cash Collateral to any remaining fees related thereto.

Subject to the terms of the Financing Order, each Loan Party, on behalf of itself and its successors, assigns, and other legal representatives (each Loan Party and all such other parties collectively, the "Releasors" and individually, a "Releasor"), hereby jointly, severally, and jointly and severally, absolutely, unconditionally and irrevocably releases, remises and forever discharges each of Agent and each Lender, its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Agent, each Lender and all such other parties collectively, the "Releasees" and each a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which any Releasor may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the date of this Payoff Letter, for or on account of, or in relation to, or in any way in connection with the Loan Agreement and Other Documents, as amended and supplemented through the date hereof.  The forgoing release shall not constitute a release of Claims with respect to the rights and obligations of the parties set forth in this Payoff Letter.

The parties hereto agree that no further Advances or other extension of credit may be made or requested, and no further Letters of Credit may be requested or issued, on or after the date hereof.  This Payoff Letter satisfies any applicable prior notice requirement set forth in the Loan Agreement or the  Other Documents.

Subject to the terms of the Financing Order, if any payment or transfer (or any portion thereof) to Agent, any Lender, or any of their respective participants shall be subsequently invalidated, declared to be fraudulent or a fraudulent conveyance or preferential, avoided, rescinded, set aside or otherwise required to be returned or repaid, whether in bankruptcy, reorganization, insolvency or similar proceedings involving any Loan Party or otherwise, then the obligations purportedly satisfied with such payment or transfer shall immediately be reinstated, without need for any action by any Person, and shall be enforceable against the Loan Parties and their successors and assigns as if such payment had never been made (in which case this Payoff Letter shall in no way impair the claims of Agent, the Lenders, and their respective participants with respect to such payment or transfer).

This Payoff Letter shall be governed by, and construed in accordance with, the laws of the State of New York, except to the extent New York law is superseded by the

Bankruptcy Code.  The provisions of this Payoff Letter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  The terms of this Payoff Letter shall survive the Payoff Date.

[*Remainder of Page Intentionally Left Blank*]

This letter may be signed in multiple counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one and the same instrument.  One or more counterparts of this letter may be delivered by facsimile, with the intention that they shall have the same effect as an original counterpart thereof.

Very truly yours,

**PNC BANK, NATIONAL ASSOCIATION, as Agent**

By _____

Name_____

Its _____

**ACKNOWLEDGED AND AGREED TO**:

Vertellus Specialties Inc.


By: _____
Name:          Anne M. Frye
Title:          Vice President


Vertellus Agriculture & Nutrition Specialties LLC


By: _____
Name:          Anne M. Frye
Title:          Vice President


Vertellus Health & Specialty Products LLC


By: _____
Name:          Anne M. Frye
Title:          Vice President


Vertellus Performance Materials Inc.


By: _____
Name:          Anne M. Frye
Title:          Vice President


Vertellus Specialties PA LLC


By: _____
Name:          Anne M. Frye
Title:          Vice President


Vertellus Specialties MI LLC


By: _____
Name:          Anne M. Frye
Title:          Vice President

Rutherford Chemicals LLC


By: _____
Name:          Anne M. Frye
Title:           Vice President




Vertellus Specialties Holdings Corp.


By: _____
Name:          Anne M. Frye
Title:           Vice President

**EXHIBIT A**

**FINANCING ORDER**

[See Attached]

**EXHIBIT B**

**UCC FINANCING STATEMENTS**

| DEBTOR | SECURED PARTY | JURISDICTION | FILING NUMBER | FILING DATE |
|--------|---------------|--------------|---------------|-------------|
| VSHC | PNC Bank, National Association, as Agent | DE | 20144394839 | 10/31/14 |
| VSI | PNC Bank, National Association, as Agent | IN | 201000008417376 | 10/04/10 |
| VSI | PNC Bank, National Association, as Agent | IN | 201400008616159 | 11/03/14 |
| VSI | PNC Bank, National Association, as Agent | Madison County, IL | 2012R20287 | 05/14/12 |
| VSI | PNC Bank, National Association, as Agent | Cuyahoga County, OH | 201205039029 | 05/03/12 |
| VANS | PNC Bank, National Association, as Agent | DE | 20103543851 | 10/01/10 |
| VANS | PNC Bank, National Association, as Agent | DE | 20144394904 | 10/31/14 |
| VPMI | PNC Bank, National Association, as Agent | NC | 20100077963G | 10/01/10 |
| VPMI | PNC Bank, National Association, as Agent | NC | 20140101987E | 10/31/14 |
| VSPA | PNC Bank, National Association, as Agent | DE | 20103543901 | 10/01/10 |
| VSPA | PNC Bank, National Association, as Agent | DE | 20144395034 | 10/31/14 |
| VSMI | PNC Bank, National Association, as Agent | DE | 20103543661 | 10/01/10 |

| DEBTOR | SECURED PARTY | JURISDICTION | FILING NUMBER | FILING DATE |
|--------|---------------|--------------|---------------|-------------|
| VSMI | PNC Bank, National Association, as Agent | DE | 20144395026 | 10/31/14 |
| VHSP | PNC Bank, National Association, as Agent | DE | 20103543455 | 10/01/10 |
| VHSP | PNC Bank, National Association, as Agent | DE | 20144394896 | 10/31/14 |
| RC | PNC Bank, National Association, as Agent | DE | 20103543570 | 10/01/10 |
| RC | PNC Bank, National Association, as Agent | DE | 20144395000 | 10/31/14 |
| RC | PNC Bank, National Association, as Agent | Hudson County, NJ | 20101015110018890 | 10/15/10 |

**EXHIBIT C**

**POSSESSORY COLLATERAL**

NONE