## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
In re:                                                   : Chapter 11
:
Vertellus Specialties Inc., *et al.*,[1]                 : Case No. 16-11290 (CSS)
:
Debtors.                                  : (Jointly Administered)
:
-------------------------------------------------------------x **Related Dkt No. 16**

### ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS, (B) APPROVING STALKING HORSE PROTECTIONS, (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) SCHEDULING AUCTION AND SALE HEARING, <u>AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF</u>

This matter coming before the Court on the motion (the "<u>Motion</u>")[2] of the above-captioned debtors (the "<u>Debtors</u>"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "<u>Bankruptcy Rules</u>"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for the entry of orders (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' assets; (b) approving the Stalking Horse Protections; (c) approving procedures related to the assumption

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vertellus Specialties Holdings Corp. (9569); Vertellus Specialties Inc. (7240); Vertellus Agriculture & Nutrition Specialties LLC (5687); Tibbs Avenue Company (9642); Vertellus Specialties PA LLC (0900); Vertellus Health & Specialty Products LLC (6325); Vertellus Specialties MI LLC (0398); Vertellus Performance Materials Inc. (7461); Rutherford Chemicals LLC (8878); Solar Aluminum Technology Services (d/b/a S.A.L.T.S.) (3632); and MRM Toluic Company, Inc. (0544). The mailing address of each of the Debtors, solely for purposes of notices and communications, is 201 N. Illinois Street, Suite 1800, Indianapolis, IN 46204.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

- 1 -

and assignment of certain of the Debtors' executory contracts and unexpired leases; (d) scheduling Auction and Sale Hearing and approving the form and manner of notice thereof; and (e) granting related relief; and (ii) (a) authorizing the sale of the Purchased Assets to the Successful Bidder, free and clear of Encumbrances, except as provided by the relevant Asset Purchase Agreement; (b) approving the assumption and assignment of the Assumed Executory Contracts; and (c) granting related relief; and the Court having reviewed the Motion and the First Day Declaration and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; (ii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation; and the Court having determined that the relief set forth in this Order is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

**IT IS FOUND AND DETERMINED THAT:**

A.    The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief set forth in this Order relating to the bidding process, including approval of (1) the Bidding Procedures, (2) the Stalking Horse Protections, (3) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Executory Contracts (the "Cure Amounts") so as to permit the assumption of the Assumed Executory Contracts under section 365 of the Bankruptcy Code and their assignment to the Successful Bidder, and (4) the forms of the Procedures Notice and Cure Notice.

EAST\125363164.8                                                                          #4822-6848-5938

B.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider granting the other relief requested in the Motion, including approval of the Sale and the transfer of the Purchased Assets and assignment of Contracts to the Successful Bidder free and clear of all Encumbrances and other interests pursuant to sections 363(f) and 365 of the Bankruptcy Code.

C.      The Stalking Horse Protections as set forth in Section 7.1 of the Stalking Horse Agreement (as such agreement may be subsequently amended) and as limited by the approval granted in this Order, to be paid under the circumstances described therein and herein to the Stalking Horse Purchaser are:  (1) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Purchaser; (2) reasonable and appropriate in light of the size and nature of the proposed Sale, the commitments and accommodations of the Stalking Horse Purchaser that have been made for the benefit of the Debtors' estates, the condition of the Purchased Assets, and the efforts that have been and will be expended by the Stalking Horse Purchaser; and (3) necessary to induce the Stalking Horse Purchaser to continue to pursue the Sale and to continue to be bound by the Stalking Horse Agreement.

D.      Moreover, the Stalking Horse Protections are an essential inducement and condition of the Stalking Horse Purchaser's entry into, and continuing obligations under, the Stalking Horse Agreement.  Unless it is assured that the Stalking Horse Protections will be available, the Stalking Horse Purchaser is unwilling to be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures).  The Stalking Horse Protections induced the Stalking Horse Purchaser to submit a bid that will serve as a

EAST\125363164.8
#4822-6848-5938

minimum or floor bid for the Purchased Assets on which the Debtors, their creditors and other bidders can rely.  The Stalking Horse Purchaser has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized.  The Stalking Horse Protections were negotiated by the Stalking Horse Purchaser and the Debtors and their respective advisors at arms' length and in good faith.  Accordingly, the Stalking Horse Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

E.    The Bidding Procedures substantially in the form attached hereto as Exhibit 1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

F.    The Stalking Horse Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exist between the Stalking Horse Purchaser and the Debtors.  The Stalking Horse Purchaser and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Purchaser's negotiation of the Stalking Horse Protections and the Bidding Procedures and entry into the Stalking Horse Agreement.

G.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

H.    To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

#4822-6848-5938

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED with respect to the relief relating to the Bidding Procedures as set forth herein.

2.      All objections to the relief requested in the Motion relating to the Bidding Procedures that have not been withdrawn, waived or settled are overruled except as reflected in the provisions of this Order.

3.      The Bidding Procedures attached hereto as Exhibit 1 are APPROVED and shall govern all Bids and bidding procedures relating to the Sale of the Purchased Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      The Good Faith Deposits of all other Qualified Bidders (other than the Stalking Horse Purchaser) shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement.

5.      The Bid Deadline shall be **August 29, 2016, at 4:00 p.m.** (prevailing Eastern Time).

6.      The Stalking Horse Protections are APPROVED and shall be paid in cash when and as set forth in the Stalking Horse Agreement; provided, however, that (i) the Break-Up Fee shall not be payable unless the Stalking Horse Agreement is terminated in accordance with its terms in connection with the Debtors' selection of a Successful Bid that (a) provides for the assumption or payment in full of the DIP Facility; and (b) includes a cash component payable to the Prepetition Term Lenders in an amount equal to the full amount of principal and accrued interest outstanding under the Prepetition Term Loan Facility (the "Payoff Amount"); (ii) the

EAST\125363164.8                                                          #4822-6848-5938

amount of the Break-Up Fee payable in the event described in sub-clause (i) shall equal fifty-percent (50%) of the amount by which the Purchase Price exceeds the Payoff Amount (not to exceed 3% of the Purchase Price as set forth in the Stalking Horse Agreement), with the remaining fifty percent (50%) remaining in the Debtors' estates for the benefit of their creditors; and (iii) notwithstanding the amount of the Expense Reimbursement set forth in the Bidding Procedures used for bidding purposes only, all fees and expenses incurred by the Prepetition Term Facility Secured Parties, the DIP Secured Parties and the Stalking Horse Purchaser in connection with the sale process shall be paid by the Debtors as fees payable to the DIP Secured Parties under Paragraph 6(d) or periodic payments made to the Prepetition Term Facility Secured Parties under Paragraph 16(d) of the *Final Order (I) Authorizing Debtors To (A) Obtain Postpetition Financing And (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties and (III) Granting Related Relief* (the "Final DIP Order"). The Debtors' obligation to pay the Stalking Horse Protections shall constitute, pursuant to sections 503 and 507 of the Bankruptcy Code, an administrative expense claim against each of the Debtors' bankruptcy estates. The Stalking Horse Protections payable pursuant to the terms of the Stalking Horse Agreement shall be payable without any further order of this Court; provided, however, that (i) all payments of fees, expenses and disbursements relating to the Expense Reimbursement (as such term is defined in the Bidding Procedures) authorized under this Paragraph shall be subject to a ten (10) day review period (which time period may be extended for all or any of the reviewing parties by agreement of the parties or further order of the Court) after receipt by the Debtors, the Committee and the U.S. Trustee of invoices therefor; and (ii) to the extent any of the Debtors, the Committee or the U.S. Trustee object to any portion of the

EAST\125363164.8                                                                    #4822-6848-5938

Expense Reimbursement, and such objection cannot be consensually resolved, such amount objected to will not be paid absent further order of this Court.

7.      Notwithstanding anything to the contrary contained herein, if the Stalking Horse Purchaser is not the Successful Bidder, upon timely payment of the Stalking Horse Protections to the Stalking Horse Purchaser, the Debtors and their respective representatives and affiliates, on the one hand, and the Stalking Horse Purchaser and its representatives and affiliates, on the other hand, shall be deemed to have fully released and discharged each other from any liability resulting from the termination of the Stalking Horse Agreement, and neither the Debtors and their respective representatives and affiliates, on the one hand, nor the Stalking Horse Purchaser and its representatives and affiliates (including, without limitation, the Prepetition Term Lenders), on the other hand, nor any other Person, will have any other remedy or cause of action under or relating to the Stalking Horse Agreement or any applicable law, including for reimbursement of expenses.

8.      Notwithstanding anything to the contrary contained in the Stalking Horse Agreement or an asset purchase agreement approved in conjunction with a Successful Bid, the Debtors and the Successful Bidder agree to waive and not prosecute any claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code belonging to the Debtors or acquired by the Successful Bidder against vendors (other than Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors) continuing to supply goods and services to the Debtors or the Successful Bidder thirty (30) days after the Closing of the Sale.

9.      The Debtors shall have the right, in consultation with the Committee and their advisors, to determine whether a bid is a Qualified Bid and shall notify all Potential Bidders

whether their bids have been recognized as such, as promptly as practicable after a Potential Bidder delivers all of the materials required by the Bidding Procedures; provided, however, that the Stalking Horse Purchaser is hereby deemed a Qualified Bidder for all purposes, and the Stalking Horse Agreement appended to the Motion as Exhibit B, is deemed a Qualified Bid for all purposes in connection with the bidding process, the Auction, and the Sale.

10.    The Auction, if an auction is necessary, shall be held at 10:00 a.m. (EST) on September 1, 2016, at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 or such other location or time as shall be timely communicated to all creditors and other entities entitled to attend the Auction.  If no Qualifying Bid other than the Stalking Horse Agreement is received before the Bid Deadline, no Auction shall be conducted and the Stalking Horse Purchaser shall be deemed the Successful Bidder.  No later than 3:00 p.m. ET on the first business day following the commencement of the Auction (except to the extent the Auction has not adjourned by such time, in such case, notice shall be filed and served no later than five hours after the conclusion of the Auction), the Debtors shall file notice of the identity of the Successful Bidder, the Back-Up Bidder and the respective amounts of such bids, and shall serve such notice by facsimile, or email (or, if neither is available, then via overnight delivery) to all Contract Counterparties and any party requesting notice pursuant to Bankruptcy Rule 2002.

11.    If the Auction is conducted, each Qualified Bidder attending shall be required to confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code, with respect to the bidding or the Sale.  The auction shall be transcribed and the Debtors, the Stalking Horse Purchaser, any other Qualified Bidder that has timely submitted a Qualified Bid, the Prepetition Term Lenders, the DIP Agent, the Term Loan Agent, the DIP

Lenders, the Committee or any other creditor of the Debtors, and the advisors to each of the foregoing may attend the Auction in person.

12.     The Debtors shall determine, in consultation with the Committee (and to the extent that the Stalking Horse Bidder has withdrawn from bidding at the Auction, the Prepetition Term Lenders) which Qualified Bid is the highest or otherwise best offer for the Purchased Assets, giving effect to the Stalking Horse Protections payable to the Stalking Horse Purchaser, as well as any additional liabilities to be assumed by the relevant Qualified Bidder and any additional costs which may be imposed on the Debtors.  For purposes of valuing Qualified Bids and determining the Successful Bid, the full face amount of a credit bid shall be deemed to have the same value as the equivalent amount of cash.

13.     The Sale Hearing shall be held on September 7, 2016 at _2_:_00_ p.m. (prevailing Eastern Time) before this Court, the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 5th Floor, Courtroom #6.

14.     Any objections to the Sale must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules and the Local Rules and (d) be filed with the Bankruptcy Court and served in accordance with the rules of this Court upon: (i) counsel to the Debtors: DLA Piper LLP (US), 203 N. LaSalle Street, Suite 1900, Chicago, Illinois 60601 (Attn: Richard A. Chesley, Esq. (richard.chesley@dlapiper.com) and Daniel Simon, Esq. (daniel.simon@dlapiper.com); (ii) counsel to the Stalking Horse Purchaser and the DIP Lenders: Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Mark Shinderman (Mshinderman@milbank.com), Dennis O'Donnell, Esq. (DODonnell@milbank.com) and Peter Newman, Esq. (PNewman@milbank.com; (iv) counsel to the DIP Agent and the Term Loan Agent, Kaye Scholer LLP, Three First National Plaza, 70

EAST\125363164.8                                                                    #4822-6848-5938

West Madison Street, Suite 4200, Chicago, IL 60602 (Attn: Michael Messersmith (michael.messersmith@kayescholer.com) and Seth Kleinman (seth.kleinman@kayescholer.com); (v) counsel to the Committee: Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn: Mark Power, Esq. (mpower@hahnhessen.com)) and (vi) the Office of the United States Trustee:  U.S. Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035 (Attn:  Juliet Sarkessian, Esq.) (collectively, the "Service Parties") so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on August 25, 2016.

15.     The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the exclusive right, in the exercise of their fiduciary obligations and business judgment, in consultation with the Consultation Parties, to cancel the Sale at any time.

16.     The following forms of notice are approved:  (a) the Notice of Sale Procedures, Auction Date, and Sale Hearing, in the form substantially similar to that attached to the Motion as Exhibit D (the "Procedures Notice"); and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached to the Motion as Exhibit E.

17.     The Debtors shall, within five (5) business days after the entry of this Order, serve a copy of the Procedures Notice and this Order by first class mail, postage prepaid on ((a) the U.S. Trustee, (b) the Committee, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all known creditors of the Debtors, (e) counsel to the Stalking Horse Purchaser, (f) counsel to the DIP Agent, (g) counsel to the DIP Lenders, (h) counsel to the

Prepetition Term Lenders, (i) all entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in or on any of the Purchased Assets, (j) all counterparties to the Debtors Executory Contracts and Unexpired Leases, (k) the Pension Benefit Guaranty Corporation, (l) the Internal Revenue Service, (m) the Environmental Protection Agency and any state environmental agencies in states in which the Debtors have environmental liabilities; (n) all state and local taxing authorities in the jurisdictions in which the Debtors have or may have any tax liability, (o) any governmental agencies that regulate the Debtors' business and (p) all known Potential Bidders.

18.      The Debtors shall, within five (5) business days after the entry of this Order, serve the Motion and the Cure Notice upon each counterparty to the Assumed Executory Contracts and its counsel (if known).  The Cure Notice shall (i) state the date, time and place of the Sale Hearing, (ii) specify the date by which any objection to the assumption and assignment of the Assumed Executory Contracts must be filed and served, (iii) include a description of each Assumed Executory Contract, (iv) the identity of the Stalking Horse Purchaser and (v) identify the amount, if any, that the Debtors believe is owed to each counterparty to the Assumed Executory Contracts in order to cure any monetary defaults thereunder (the "Cure Amounts") pursuant to section 365 of the Bankruptcy Code.

19.      The Successful Bidder may designate additional Contracts and Leases for assumption and assignment at any time up until the date of the closing of the Sale.  For any Contracts or Leases that are designated as Assumed Executory Contracts by the Successful Bidder after service of the Cure Notice, the Debtors shall, within two (2) business days of receiving such designation, serve the Motion and the Supplemental Cure Notice upon each counterparty to such Assumed Executory Contracts and its counsel (if known).

EAST\125363164.8

#4822-6848-5938

20.     If any counterparty to an Assumed Executory Contract objects for any reason to the assumption and assignment of its Assumed Executory Contract or to the proposed Cure Amount set forth in the Cure Notice, such counterparty must file with the Court a written objection stating that it objects to the relevant Cure Amount (each, a "Cure Objection") and/or the ability of the Stalking Horse Purchaser to furnish adequate assurance of future performance (each, an "Adequate Assurance Objection") and serve such Cure Objection and/or Adequate Assurance Objection so as to be received by the Service Parties by no later than August 25, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Assumed Executory Contract Objection Deadline"); provided, however, that in the event that the Successful Bidder is not the Stalking Horse Purchaser, any counterparty to an Assumed Executory Contract may assert an Adequate Assurance Objection at or prior to the Sale Hearing.  With respect to an Assumed Executory Contract listed in a Supplemental Cure Notice, the Assumed Executory Contract Objection Deadline shall be fourteen (14) days after the service of such Supplemental Cure Notice on the contract counterparty.   Each Cure Objection must set forth with specificity each and every asserted default in the applicable Contract or Lease and the monetary cure amount asserted by the counterparty to the extent it differs from the amount, if any, proposed by the Debtors in the Cure Notice or the Supplemental Cure Notice, as applicable.  Notwithstanding the foregoing, an Assumed Executory Contract counterparty is encouraged to contact Debtors' counsel, DLA Piper LLP (US), prior to the deadline to file and serve an objection to the Cure Amount in an attempt to reach consensus on the Cure Amount based upon reasonable and supportable documentation provided by such counterparty

21.     In the event that the Debtors and the non-debtor counterparty cannot resolve the Cure Objection, the Debtors shall segregate the disputed Cure Amount (each, a "Disputed Cure

EAST\125363164.8                                                                                                    #4822-6848-5938

<u>Amount</u>") pending the resolution of such dispute by the Court or mutual agreement of the parties.  Cure Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

22.     Any counterparty to an Assumed Executory Contract that fails to timely file and serve a Cure Objection shall be forever barred from asserting that it is owed a Cure Amount in excess of that set forth in the Cure Notice or Supplemental Cure Notice, as applicable,.  If no timely Cure Objection is filed and served with respect to an Assumed Executory Contract, the Cure Amount identified in the Cure Notice with respect to such Assumed Executory Contract shall be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults thereunder if the Successful Bidder ultimately decides to have such Assumed Executory Contract assumed by the Debtors and assigned to it.

23.     If any counterparty to an Assumed Executory Contract objects for any reason (other than reasons for a Cure Objection), including on adequate assurance of future performance grounds, to the assumption and assignment of its Assumed Executory Contract, such counterparty must file and serve such Adequate Assurance Objection so as to be received by the Service Parties by no later than (the "<u>Adequate Assurance Objection Deadline</u>") the later of: (i) 4:00 p.m. (prevailing Eastern Time) on August 25, 2016, unless such Adequate Assurance Objection relates to a Successful Bidder that is not the Stalking Horse Bidder, in which case such party may raise such objection at any time at or prior to the Sale Hearing; (ii) the date otherwise specified in the Cure Notice or Supplemental Cure Notice, as applicable, or (iii) the date set forth in the motion to assume such Assumed Executory Contract if such contract is to be assumed and assigned after the Sale Hearing.  The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to

EAST\125363164.8                                                                      #4822-6848-5938

sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing (or a separate hearing if the Assumed Executory Contract is designated to be assumed and assigned after the Sale Hearing). Any counterparty failing to timely file a Cure Objection and/or an Adequate Assurance Objection shall be forever barred from objecting, on any ground, to assumption by the Debtors and assignment to the Successful Bidder of the relevant Assumed Executory Contract.

24. If a Contract or Lease is assumed and assigned pursuant to Court Order, the counterparty to such Assumed Executory Contract shall receive the applicable Cure Amount, if any (except for Disputed Cure Amounts), no later than three (3) business days following the closing of the Sale, with payment to be made pursuant to the terms of the Successful Bidder's Asset Purchase Agreement. Except to the extent otherwise provided in the Successful Bidder's Asset Purchase Agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising under or in connection with the Assumed Executory Contracts after the assumption and assignment thereof pursuant to section 365(k) of the Bankruptcy Code.

25. Notwithstanding any provision in this Order, the Stalking Horse Agreement or the Bidding Procedures to the contrary, this Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Assumed Executory Contract, including those relating to the Cure Amounts or the provision of adequate assurance of future performance. No Assumed Executory Contract shall be deemed assumed or assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of such Assumed Executory Contract, (b) the date the Sale is closed or (c) the date the Cure Amount is paid. The Successful Bidder shall have no rights in and to any particular Assumed Executory Contract until such time as the particular Assumed Executory Contract is assumed and assigned to the Successful Bidder.

#4822-6848-5938

26.     The Debtors' inclusion of a Contract or Lease on the Cure Notice or any Supplemental Cure Notice shall not guarantee that such Contract or Lease will ultimately be assumed or assumed and assigned.  The Cure Notice and any Supplemental Cure Notice shall be without prejudice to the Successful Bidder's right, if any, under its Asset Purchase Agreement to subsequently (a) decline to take assignment of any Contract or Lease or (b) include additional Contracts or Leases for assumption and assignment pursuant to the provisions of Paragraph 18 herein.

27.     The inclusion of a Contract or Lease and related Cure Amount on a Cure Notice or Supplemental Cure Notice shall not constitute or be deemed to be  a determination or admission by the Debtors, the Stalking Horse Purchaser or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost constitutes a claim against the Debtors in such amount (all rights with respect thereto being expressly reserved).  The Debtors reserve all of their rights, claims and causes of action with respect to each Contract or Lease listed on the Cure Notice or any Supplemental Cure Notice.

28.     If the Stalking Horse Purchaser is not the Successful Bidder, the proceeds of the Sale shall be paid to the Debtors at the closing for distribution within two (2) business days following the Closing of the Sale and subject to the liens and claims granted with respect to the ABL Surviving Obligations in the *Interim Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Related Relief and (IV) Scheduling a Final Hearing* [Docket. No.  61] as follows: (a) *first*, to the DIP Lenders in satisfaction of their secured claims under the DIP Credit Agreement unless assumed; (b) *second*, to the Stalking Horse Purchaser in

- 15 -

satisfaction of any amounts payable with respect to the Stalking Horse Protections (subject, in all respects, to the review period provided in Paragraph 6 of this Order); and (c) third, to the Prepetition Term Lenders, in satisfaction of their secured claims under the Term Loan Agreement, including, with respect to (b) and (c), all accrued prepetition and/or postpetition interest at the default rate, to the extent allowed under the Bankruptcy Code.  If the Stalking Horse Purchaser is the Successful Bidder, upon Closing, any cash proceeds of the Sale shall be remitted to the Debtors for distribution in accordance with the priorities set forth in the Bankruptcy Code.

29.     The following deadlines are hereby approved:

| |
|---|
| Service of Bidding Procedures Order:  July 6, 2016 |
| Service of Cure Notice: July 6, 2016 |
| Assumption/Assignment and Cure Objection Deadline: August 25, 2016 |
| Sale Objection Deadline: August 25, 2016 |
| Bid Deadline: August 29, 2016 |
| Auction Date: September 1, 2016 |
| Sale Hearing: September 7, 2016 |
| Adequate Assurance Objection (In Event Stalking Horse Purchaser is not Successful Bidder: September 7, 2016 |

30.     To the extent the provisions of this Order are inconsistent with the provisions of the Stalking Horse Agreement and/or any Exhibit referenced herein or therein or with the Motion, the provisions of this Order shall control.

31.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

EAST\125363164.8                                                                                    #4822-6848-5938

32.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.


Dated:   June 28, 2016
            Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

EAST\125363164.8                                                                                          #4822-6848-5938